Trevor R. **WHITEHEAD**, Plaintiff,

v.

Kathryn **VAN LEUVEN**, now known as Kathryn **Chase**, and Sharon Eileen **Mc-Connell**, now known as Sharon Eileen **Patterson**, Defendants.

Civ. No. 1–71–8.

United States District Court, D. Idaho.

Sept. 1, 1972.

Hawley, Troxell, Ennis & Hawley, Boise, Idaho, for plaintiff.

Elam, Burke, Jeppesen, Evans & Boyd, Boise, Idaho, for defendants.

## MEMORANDUM DECISION AND ORDER

ANDERSON, District Judge.

This personal injury case has gone to judgment after jury trial. It is now before the Court on plaintiff's proceedings supplementary to, and in aid of, satisfaction of the judgment against defendants Patterson and Van Leuven. Judgment was entered against defendants for $74,710.52. Thereafter, the liability insurance carriers for defendants paid $33,799.70 on behalf of defendants to apply in reduction of the judgment. The unsatisfied balance of the judgment is $41,716.18.

By uncontradicted affidavits it appears that defendants, young ladies of college age, have no unexempt property that can be reached by execution in satisfaction of the judgment. A showing is further made that defendants have, or may have, a claim or cause of action against their respective insurance carriers for a wrongful failure of those companies to settle within the policy limits. From all that appears of record, the insurance companies, by their attorneys, handled all aspects of this case from beginning to end and Patterson and Van Leuven did not, and do not now, have independent counsel of record. The plaintiff's affidavit asserts that demand has been made upon Patterson and Van Leuven for assignment of their alleged claims upon the giving of a covenant not to execute, that this request has been denied and that, of course, the insurance companies deny that any such claim or cause of action exists.

After oral argument and briefing, plaintiff finally rests his case on several sections of the Idaho Code under the title "Proceedings Supplementary to Execution." They are as follows:

"11–506. *Application of judgment debtor's property to satisfaction of execution.*—The judge or referee may order any money or property of a judgment debtor not exempt from execution, in the hands of such debtor or any other person, or due to the judgment debtor, to be applied toward the satisfaction of the judgment. [C.C. P.1881, § 465; R.S., R.C., & C.L., § 4509; C.S., § 6946; I.C.A., § 8–506.]"

On its face this section would seem to intend to cover established property rights and liquidated claims of the judgment debtor.

"11–507. *Proceedings against defendant's debtor.*—If it *appears* that a person or corporation, *alleged* to have *money* or *property* of the judgment debtor, *or to be indebted to him, claims an interest in the money or property adverse to him, or denies the debt,* the court or judge may authorize, by an order made to that effect, the judgment creditor to institute an action against such person or corporation for the recovery of such interest or debt; and the court or judge may, by order, forbid a transfer or other disposition of such interest or debt, until an action can be commenced and prosecuted to judgment. Such order may be modified or vacated by the judge granting the same, or the court in which the action is brought, at any time, upon such terms as may be just. [C.C.P.1881, § 466; R.S., R.C., & C.L., § 4510; C.S., § 6947; I.C.A., § 8–507.]" (Emphasis added.)

When compared to Sec. 11–506, I.C., supra, this section would seem to refer to

and cover disputed and unliquidated money or property rights or claims.

From the research of counsel and the Court's own, this would appear to be a case of first impression in Idaho, thus the Court is confronted with the inspirational approach of deciding what is, or will be, the Idaho law on the issue.

Plaintiff vigorously contends that Mewes v. Jacobson, 70 Idaho 427, 220 P.2d 681 (1950) lays the matter at rest. Just as vigorously defendants assert that it does not and that it is distinguishable. The facts recited in *Mewes* are meager. Mewes obtained judgment against Jacobson for $7,500.00. Thereafter Mewes cited Jacobson's insurance carrier into court pursuant to Sections 11–504 and 11–505, Idaho Code, to answer interrogatories concerning any money alleged to be owing to Jacobson. The insurance carrier, through its officers and attorney, denied any liability (coverage) to Jacobson. After hearing, the trial court found liability to Jacobson from his carrier and entered a summary judgment against it for $7,500.00. On appeal the Idaho Supreme Court held that the trial court exceeded its jurisdiction under the statutes by entering judgment, but did hold that under Sec. 11–507, I.C., supra, the trial court did have the power to authorize the judgment creditor to institute a plenary action against the insurance carrier to litigate with it Jacobson's alleged claim or cause of action.

Counsel for the defendants has examined the transcript on appeal in Mewes v. Jacobson, supra, and, in addition to facts set forth in the opinion in that case, now reports to this court that the insurance company's attorney conceded in open court that the judgment creditor (the injured party in a personal injury suit) could, by court order, bring an action against the insurance company to determine its liability for the loss, undoubtedly, having reference to Sec. 11–507, Idaho Code. Defendants here then conclude from this that the litigation ensued by consent and, therefore, the case cannot be regarded as precedent. With the greatest respect for counsel's reasoning, it does not appeal. It seems to be just as reasonable to conclude that the company attorney in the *Mewes* case conceded the plain language of Sec. 11–507, I.C., and its applicability to the predicament in which he found himself.

Additionally, defendants' counsel here advises this Court that *Mewes* involved the issue of public liability *coverage* for its alleged insured and then concludes, correctly, that the cause of action there arose out of contract and did not involve a claim of excess liability nor arise out of a claimed tort—presumably meaning fraud or bad faith in failing or refusing to settle within the policy limits. These additional reported facts in the *Mewes* case are, of course, accepted as being true and correct. Nevertheless, they are not in the opinion of the Court dispositive of the issue here.

While *Mewes* may not go precisely to the point here, it is persuasive guidance as to what the Idaho Supreme Court might do if presented with the issue, especially when read in conjunction with Ch. 5, Title 11, Idaho Code, and the plain language of Sec. 11–507, Idaho Code, and Secs. 5–302, I.C. and 55–402, I.C., infra, both of which are discussed later.

Defendants' counsel then argues the "flood gate" doctrine and gives the example that a judgment creditor of a farmer could conduct an investigation to determine whether the farmer might have been wrongfully flooded by a neighbor, and, contrary to the wishes of the farmer, appropriate the cause of action to himself to satisfy his judgment claim and that, therefore, there would be endless litigation. The "flood gate" doctrine has never been a reason for denying a legal right and remedy if, in fact, the law recognizes its existence. Defendants' argument and attempted analogy fails for another reason. Defendants themselves cite authority for the proposition that while a personal tort action may not be the subject of a creditor's suit—"it is otherwise as to a right of action for conversion of or injury to

property." 21 C.J.S. Creditors' Suits § 29, p. 1071. In defendants' example of the wrongfully flooded farmer we are speaking of injury to property.

Defendants cite and rely mainly upon several cases which hold that a personal injury claim sounding in tort, not reduced to judgment, is not a debt which can be reached' by garnishment. For example, Coty v. Cogswell (Mont.1935), 50 P.2d 249. This line of cases is inappropriate here. We are not dealing with the personal injury action. That has been tried and has been liquidated by the judgment. We are, as already stated, dealing with the insured's alleged cause of action after judgment for a claimed "bad faith" refusal of the insurance carrier to settle within the policy limits.

■ The root solution of the problem seems to lie in an analysis of the nature of the insured's claim against the insurer for a claim of excess liability above the limits of coverage afforded by the policy. If we must deal in dichotomies of whether such a claim sounds in tort or contract, the contract view seems more logical than tort. In law we can have a fraudulent as well as a negligent breach of contractual obligations. In addition to the express obligations of a public liability insurance agreement requiring assumption of investigation, defense and settlement of claims, there is an implied obligation in every contract that each of the parties will act in good faith toward the other with respect to the performance of the obligations imposed on each party by the contract. Were this not so as implied to the public liability insurance contract, the insured would be at the complete mercy of the insurer and it would operate to deprive the insured of the benefits of his contract. 11 Williston on Contr., 3rd Ed., Sec. 1295, pp. 40–42.

Therefore, any alleged breach of this implied obligation would appear to arise out of the contract and not out of any other duty or relationship that could be characterized as giving rise to tortious misconduct distinct and apart from the

implied obligation. The contract creates the relationship and the duty and the conduct of the parties determines whether or not there is a breach. Simply put, absent the existence of the contractual obligations, the insured could have no claim based on "bad faith" for the insurer's failure to settle within the limits of the contract.

Two other sections of the Idaho Code deserve consideration and each recognizes the assignability of a "thing" or chose in action.

"5–302. *Assignment of thing in action.*—In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment; but this section does not apply to a negotiable instrument transferred, in good faith and upon good consideration, before maturity. [C.C.P. 1881, § 183; R.S., R.C., & C. L., § 4091; C.S., § 6635; I.C.A., § 5–302.]"

"55–402. *Transfer and devolution of things in action.*—A thing in action arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner it passes to his personal representatives, except where, in the cases provided in the Code of Civil Procedure, it passes to his devisees or successor in office. [R.S., § 2891; reen. R.C. & C.L., § 3096; C.S., § 5364; I.C.A., § 54–402.]" (Emphasis added.)

■ Is the cause of action for a claimed wrongful failure to settle within policy limits either a "thing in action *arising out of the violation* of a right of property, or out *of an obligation*"? From the previous observations the conclusion in the affirmative is compelling. We can cast out the violation of "right of property." However, one cannot read out and cast aside "—a thing in action arising out of—an obligation—." For the purpose of this opinion, the word "obligation" will be construed narrowly to mean a contractual obligation al-

though strong argument could be made that it should have a broad interpretation and thus include personal rights and obligations inter se, i.e., tort actions for personal injuries, false imprisonment and the like, and thus in derogation of the common-law rules of survivability and assignability.

Further support for the view that the cause of action arises out of contract is found in Gray v. Nationwide Mut. Ins. Co. (1966), 422 Pa. 500, 223 A.2d 8, and there held to be properly an action in assumpsit arising out of the breach of the insurance contract. The court also deals with a number of the fears and arguments expressed by defendants' counsel in this case. Most states now hold that such a cause of action does exist and that it is assignable. Anno. 40 A.L.R.2d 168; 12 A.L.R.3d 1158. The theoretical basis for such an action in California is contract, i.e., the breach of an implied covenant or "obligation" of good faith. Critz v. Farmers Ins. Group, 230 Cal. App.2d 788, 41 Cal.Rptr. 401, 12 A.L.R. 3d 1142. The Idaho Supreme Court recently held that such a cause of action does exist in Idaho. Openshaw v. Allstate Ins. Co., 94 Idaho 192, 484 P.2d 1032, 1034 (1971). The action was based upon voluntarily assigned claims of the insured against the insurer and after an excess judgment in the personal injury action. The Supreme Court refers to both theories of recovery, i.e., breach of implied obligation to exercise good faith and freedom from negligence in conducting the defense and in settlement negotiations. That Court refrains from making a choice of either theory or a hybrid of both, stating that "the undisputed facts do not authorize relief under any of these theories." P. 1034 of 484 P.2d. Apparently no issue was raised as to the assignability of the insured's cause of action to the injured judgment creditors. The most that can be said pertaining to the issue of concern here is that the Idaho Supreme Court recognized the existence of an implied obligation theory of recovery in other jurisdictions considering the question.

Further guidance may be gleaned from MacLeod v. Stelle, 43 Idaho 64, 249 P. 254, involving a suit for damages on assigned claims arising out of alleged fraud in the sale of mining stock. The court first broadly observes that even in 1926 there was felt to be a trend in existence that certain tort claims were assignable, but does squarely and directly hold and apparently still adheres to:

"—the principle that an injury suffered through fraud, false representations, or deceit, resulting in diminution of the estate of the injured party, survives and is assignable." P. 257 of 249 P.

The question is immediately presented: How can it be said that there is any diminution of the estates of persons who are presently judgment and execution-proof? How can an insolvent person be injured by failure to settle within policy limits? A callous argument and it is best answered by Justice Rogosheske of the Supreme Court of Minnesota in Lange v. Fidelity & Cas. Co. of N.Y., 290 Minn. 61, 185 N.W.2d 881, 885 (1971):

"Because we believe that a judgment-proof insured does indeed suffer injury when a claimant obtains a judgment against him in excess of liability insurance policy limits, we now overrule language in the Norwood case to the contrary, and hold, as most states hold,[3] that an insured may bring an action against his insurer for 'bad faith' refusal to settle whether or not the insured has paid, or can pay, that part of the judgment which exceeds the policy limits. A judgment-proof insured suffers injury from a judgment against him in excess of policy limits because such a judgment will potentially impair his credit, place a cloud on the title to his exempt estate, impair his ability to successfully apply

3. Annotation, 40 A.L.R. (2d) 168, § 8[a].

for loans, and may eventually require him to go through bankruptcy. Further, if the rule were that a judgment-proof insured suffers no injury from an excess judgment, an insurer's responsiveness to its well-established duty to give equal consideration to an insolvent insured's interests would tend to become meaningless."

One might add to Justice Rogosheske's list the probable impairment of the value of a gift of property or an inheritance from the parents or other relatives of these young ladies.

If an insolvent insured does suffer such injury, he also suffers a definite diminution in his potential estate and property rights and the diminution of his right to acquire unencumbered or non-exempt property in the future. After all, this judgment could be renewed *ad infinitum* every six years, Sec. 5–215 I.C., and suit on the judgment could be brought in any jurisdiction where these defendants may be found and hereafter acquire non-exempt property.

■ The causes of action in this case may exist only in the mind of the beholder. Whether or not they do exist will, of course, depend on the facts (or lack of them) adduced at a trial. Nevertheless, these are potential assets and no logical or legal reason can be perceived why they should not be marshalled for the benefit of a judgment creditor just as any other asset of a judgment debtor. The indifference or arbitrariness of the judgment debtor should not foreclose the judgment creditor or this court. This result is consistent with the policy underlying proceedings supplementary to execution. *Lange*, supra, p. 887.

Therefore, the motion to invoke the provisions and procedures plainly contemplated by Sec. 11–507, I.C., supra, be,

and the same is hereby, granted and the following order is hereby entered:

It appearing to the satisfaction of the Court from the affidavits on file herein, the records and proceedings heretofore had, the admissions of defendants and their counsel, that it is alleged and claimed that defendants Van Leuven and Patterson each have a claim against their respective insurance carriers, and it is alleged that said insurance carriers are indebted to them, and each of them, and that said insurance carriers deny the same; and that said defendants unjustly refuse to apply the same to the judgment entered herein or to assign said claims to the plaintiff, and that said alleged claims are property rights of the defendants herein, the judgment debtors, and that the same are not exempt from execution under the laws of the State of Idaho, or otherwise;

It further appearing that a portion of said judgment entered herein remains unsatisfied and that said defendants have no other assets subject to execution;

It is hereby ordered, and this does order, that plaintiff Whitehead, pursuant to Title 11, Chapter 5, Idaho Code, is hereby authorized to institute an action against Hartford Insurance Group and Western Casualty and Surety Company upon the alleged claims or causes of action of defendants, Van Leuven and Patterson, for the recovery of said alleged indebtedness.

It is further ordered that said defendants and their said insurance carriers, and each of them, and their respective officers, agents, employees or attorneys, are enjoined from, and forbidden to make, any transfer or other disposition of such alleged debts, claims, or causes of action until an action can be commenced by plaintiff herein and prosecuted to final judgment.