548 P.2d 72

RUSS BALLARD & FAMILY ACHIEVEMENT INSTITUTE, a corporation, Plaintiff, Counter-Defendant and Respondent,

v.

LAVA HOT SPRINGS RESORT, INC., Defendant, Cross-Defendant,

v.

Fred N. COATS, Defendant, Counter-Claimant and Cross Complainant-Respondent,

v.

SHULER BROS., Defendants, Cross-Plaintiffs, Third-Party Plaintiffs, Cross-Defendants-Respondents,

and

Reed J. Bowen, Third-Party Defendant,

and

Harold Irick and Norma Irick, husband and wife, Defendants,

and

The United States of America, Defendant-Appellant.

RUSS BALLARD & FAMILY ACHIEVEMENT INSTITUTE, a corporation, Plaintiff, Counter-Defendant and Respondent,

v.

LAVA HOT SPRINGS RESORT, INC., Defendant, Cross-Defendant and Appellant,

v.

Fred N. COATS, Defendant, Counter-Claimant and Cross Complainant and Respondent,

v.

SHULER BROTHERS, Defendant, Cross-Plaintiffs, Third-Party Plaintiffs, Cross-Defendants and Respondents,

and

Reed J. Bowen, Third-Party Defendant,

and

Harold Irick and Norma Irick, husband and wife, Defendants,

and

The United States of America, Defendant-Respondent.

Nos. 11703, 11813.

Supreme Court of Idaho.

March 19, 1976.

**574**

Sidney E. Smith, U. S. Atty., Paul L. Westberg, Asst. U. S. Atty., Boise, Robert S. Watkins and Michael L. Paup, Tax Div. Dept. of Justice, Washington, D. C., for the United States.

Roger D. Cox, Idaho Falls, for Lava Hot Springs Resort, Inc.

Kenneth E. Lyon, Jr., Pocatello, for Ballard.

Callis A. Caldwell, Pocatello, for Coats.

BAKES, Justice.

These are consolidated appeals from a judgment entered on January 7, 1974, in an action instituted in August, 1971, by Russ Ballard, an individual, and Family Achievement Institute (FAI), a Utah corporation, to foreclose a mortgage on land owned by Lava Hot Springs Resort, Inc., an Idaho corporation.[1] The appellant in No. 11703 is the United States of America, and the appellant in No. 11813 is Lava Hot Springs Resort, Inc. By its terms the mortgage secured an indebtedness of $25,000 at 8% interest, and the note was due December 1, 1970. The real property involved consists of 217 acres located in Bannock County, Idaho, which had been used primarily for ranching, and which Lava Hot Springs Resort, Inc., had intended to develop as a recreation and resort area.

All other persons who owned or claimed an interest in this property were also named in the foreclosure action. Default judgments were taken against several of these named claimants, but those who appeared and asserted their claims were Fred N. Coats, George W. Shuler and Don H. Shuler, dba Shuler Bros., and the United States of America. A court trial was had on April 17 and 18, 1973, in Caribou County (venue was changed by stipulation of the parties), during which the deposition of Harold Irick, an alleged former owner of the property, and a founder and major shareholder in Lava Hot Springs Resort, Inc., was read into the record. Coats, Shuler Bros. and the United States asserted liens against the property which they claimed were prior to Ballard's mortgage on the basis of judgments[2] which

---

[1] Ballard, the president of FAI, had advanced money to Lava Hot Springs Resort, Inc., and had subsequently received an assignment of a note and mortgage from Reed Bowen, the original mortgagee and the attorney for Lava Hot Springs Resort, Inc. Bowen had advanced $25,000 to Lava Hot Springs Resort, Inc., secured by the mortgage, in December, 1968. His mortgage was assigned to Ballard and there is no issue on appeal regarding that transaction. The obligation which is the subject of this action is apparently owed to Ballard individually; however, the assignment names both Ballard and FAI as as-

signees and thus both Ballard and FAI are named plaintiffs.

[2] The claim of the United States consists of tax liens against Harold Irick in the total amount of $56,068.17. notices of which were recorded in Bannock County on September 20, 1968. Internal Revenue Code (26 U.S.C.), § 6321 *et seq.* Section 6323 states that upon filing of a notice of tax lien, the lien of the United States is valid against any subsequent purchaser, owner of a security interest, mechanics lienor, or judgment lien creditor. All references in this opinion to the judgment creditors of Harold Irick shall include the United States by virtue of its tax lien claims.

they had obtained against Harold and Norma Irick and recorded in Bannock County.

The trial court found: (1) that Harold and Norma Irick had owned the property in common with Frank and Cecelia Jouglard, who were the titleholders of record; (2) that Lava Hot Springs Resort, Inc., had agreed to pay Iricks $125,000 for their equity in the property, and this amount remains unpaid; and (3) that Iricks held a vendor's lien against the property in the amount of $125,000. The trial court concluded: (1) that the Iricks' judgment creditors could assert on their behalf the vendor's lien which Iricks held against the property; (2) that priority of liens against the property, the title to which was in Lava Hot Springs Resort, Inc., is as follows: first, Coats; second, Ballard and FAI; and third, Irick; and (3) that Shuler Bros. had first priority against the amounts due Iricks, and United States had second priority against the amounts due Iricks.

Lava Hot Springs Resort, Inc., and the United States have appealed from the judgment entered by the trial court. Lava Hot Springs Resort, Inc., challenges the ruling of the trial court allowing Irick's deposition to be admitted into evidence, the findings of the trial court that Harold Irick has owned this property, and that Lava Hot Springs Resort, Inc., had agreed to pay Irick $125,000 for his equity, which amount remains unpaid, and the conclusions of the trial court that Irick's creditors could assert on his behalf the vendor's lien which Irick held against the property and that Coats had first lien against the property.

We affirm the action of the trial court admitting the deposition of Harold Irick into evidence, but we set aside the findings of the trial court that Harold and Norma Irick owned the property in dispute, that

Lava Hot Springs Resort, Inc., agreed to pay Iricks $125,000 for their equity in the property, and that Iricks held a vendor's lien against the property in the amount of $125,000, and the conclusions of law based thereon. In light of this disposition in appeal No. 11813, we need not reach the issues raised in the appeal (No. 11703) of the United States regarding the priority of liens against the property.

1. *The admissibility of Harold Irick's deposition.*

Harold and Norma Irick were joined as parties defendant by Ballard, who alleged in the complaint that Iricks claimed an interest in the real property but that the interest would be subject to the lien of the plaintiff's mortgage. Iricks never filed any responsive pleading in the case, nor did they appear and assert or defend any claim which they may have had. Harold Irick was deposed on July 5, 1972, by the plaintiff Ballard, the defendant and cross claimant Shuler Bros., the defendant Lava Hot Springs Resort, Inc., and the defendant Fred Coats. At trial nine months later, the attorney for Shuler Bros. moved that the deposition of Irick be published by the court as testimony of an adverse party under Rule 26(d)(2) (present Rule 32(a)(2)). He also lodged with the court a subpoena and sheriff's return showing that the subpoena was issued on April 10, 1973 (one week prior to trial), and that the sheriff of Bannock County was unable to locate Irick. The trial court ruled, over the objections of Ballard and Lava Hot Springs Resort, Inc., that the deposition could be used for all purposes.

Lava Hot Springs Resort, Inc., claims that it was error for the trial court to allow the deposition of Harold Irick to be used. Its arguments in support of this claim may be summarized as follows: (1) the deposition was not signed or read by Harold Irick as required by I.R.C.P. 30(e) [3] and (2) there was no finding of

3. "[Former] *Rule* 30(e). *Submission to witness—Changes—Signing.*—When the testimony is fully transcribed the deposition shall be submitted to the witness for examination

and shall be read to or by him, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires

unavailability of the witness Irick as required by I.R.C.P. 26(d)(3).[4]

█ The reason the deposition was never read or signed by Harold Irick is explained in a "certificate of court reporter" filed with the court by the reporter who took the deposition of Irick. This statement alleges that the reporter had been instructed by Irick to sent the transcribed deposition to Irick's attorney and that he forwarded the deposition to the attorney with instructions to request Irick to read through the deposition and sign it, and then to return the deposition to him. The deposition was in the possession of Irick's attorney for seven months, from July 20, 1972, to February 20, 1973, at which time it was returned unsigned to the court. Even if the objection to the publication of Irick's deposition made at trial did constitute a prompt motion to suppress the deposition as required by I.R.C.P. 32(d),[5] the statement of the court reporter constitutes a sufficient explanation of the reason the deposition was unsigned, and it was not an abuse of discretion for the court to allow the deposition to be used as though it had been signed. *Cf. Ikerd v. Lapworth*, 435 F.2d 197 (7th Cir. 1970); *Bernstein v. Brenner*, 51 F.R.D. 9 (D.D.C.1970).

The next objection to the use of Harold Irick's deposition at trial is that the trial court made no finding regarding Irick's unavailability to testify at trial as required by then Rule 26(d)(3). At trial during the preliminary motions and stipulations, the attorney for Shuler Bros. stated:

> "I'd at this time lodge with the court a civil subpoena and a sheriff's return showing that the subpoena was issued the 10th of April, 1973, addressed to Mr. Harold Irick and that the sheriff of Bannock County was unable to locate Mr. Irick.
>
> "THE COURT: It's lodged with the court." Rptr. Tr., p. 36.

The objections raised by the opponents to the use of the deposition were (1) that it was offered prematurely in the trial; (2) that it was unsigned; and (3) that it would somehow be unfair to Irick. No one claimed that Irick was not an adverse

---

to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign. If the deposition is not signed by the witness, the officer shall sign it and state on the record the fact of the waiver or of the illness or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefor; and the deposition may then be used as fully as though signed, unless on a motion to suppress under rule 32(d) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part." This rule now provides a 30 day time limit within which the deponent should sign the deposition.

4. "[Former] *Rule 26(d)(3)*. *Use for any purpose.*—The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: 1, that the witness is dead; or 2, that the witness is at a greater distance than one hundred (100) miles from the place of trial or hearing, or is out of the state of Idaho, unless it appears that the absence of the witness was procured by the party offering the deposition; or 3, that the witness is unable to attend or testify because of age, sickness, infirmity or imprisonment; or 4, that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or 5, upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used." This provision is now I.R.C.P. 32(a)(3).

5. "[Former] *Rule 32(d)*. *As to completion and return of deposition.*—Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed, or otherwise dealt with by the officer under rules 30 and 31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained." This provision is now I.R.C.P. 32(d)(4).

party, or that he was in fact available at the time of trial.

We are satisfied that a sufficient showing was made in the trial court that the party offering the deposition was unable to procure the attendance of Harold Irick by subpoena. *Accord: Otis Elevator Co. v. McLaney,* 406 P.2d 7 (Alaska 1965); and *cf., Grubb v. Grubb,* 208 Kan. 484, 493 P.2d 189 (1972); *Ikerd v. Lapworth,* 435 F.2d 197 (7th Cir. 1970); *U. S. v. Bowen,* 411 F.2d 923 (5th Cir. 1969). However, our conclusion in this case that the trial court did not abuse its discretion in allowing the deposition to be offered rests primarily on Rule 26(d)(2) [6] which allowed the deposition of a party to be used by an adverse party for any purpose. There is no requirement of a showing of unavailability before an adverse party's deposition may be admitted as substantive evidence. *Blankenship v. Myers,* 97 Idaho 356, 544 P.2d 314 (1975); 8 Wright & Miller, Federal Practice & Procedure, § 2145 (1970).

As previously noted, Lava Hot Springs Resort, Inc., did not argue at trial, nor does it argue on appeal, that Harold Irick is not an adverse party. The complaint joined Irick as a party defendant, and the parties offering the deposition were his judgment creditors whose claims were adverse to Irick's. Further, Harold Irick is a major shareholder in Lava Hot Springs Resort, Inc., and in that capacity his position is clearly adverse to that of the proponents of the deposition.

We emphasize that our ruling that the deposition of Harold Irick was properly admitted as the deposition of an adverse party does not affect the precept which governs the admission of depositions at trial:

"RULE 26(d). Use of depositions.—At the trial or upon the hearing of a motion or an interlocutory proceeding, any part

or all of a deposition, *so far as admissible under the rules of evidence,* may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, . . . ." (Emphasis added).[7]

*See* 8 Wright & Miller, Federal Practice and Procedure, §§ 2142, 2143 (1970). The deposition of Harold Irick was clearly taken for discovery purposes. He was a local resident; those present at the deposition in July, 1972, must have assumed that he would be present at trial. As a result, much of his testimony is incomplete and irrelevant. Further, Irick alleged in his deposition that he possessed documentary proof of his claims of ownership of the property, of amounts he had invested in the property, of the sale of the property to Lava Hot Springs Resort, Inc. None of these documents were produced at the deposition, nor were they introduced at trial. Consequently, the only proof in the record of Irick's claims are his self serving, unsubstantiated statements contained in the deposition. Ballard and Lava Hot Springs Resort, Inc., timely objected to many of these statements under I.R.C.P. 26(e) (now I.R.C.P. 32(b)), most of which were properly excluded by the trial court.

## 2. The trial court's findings.

Appellant Lava Hot Springs Resort, Inc., next contends that even if this Court rules that the deposition of Harold Irick was properly admitted, there is no substantial, competent evidence to support the findings of the trial court regarding Harold Irick's alleged interest in the property, and the alleged sale of that interest to Lava Hot Springs Resort, Inc.

In his deposition, Harold Irick states that in 1959 the property was owned by one Ernie Giraud, that Giraud was in financial difficulties, and that Irick was appointed receiver on Giraud's behalf and en-

---

6. "[Former] *Rule 26(d)(2). Use where deponent a party.*—The deposition of a party or of any one who at the time of taking the deposition was an officer, director, or managing agent of a public or private corporation, partnership, or association which is a party

may be used by an adverse party for any purpose." This provision is now I.R.C.P. 32(a)(2).

7. This provision is now contained in I.R.C.P. 32(a).

tered the property in that capacity. The Iricks lived on this property from 1960 on and were in possession of the property at all times relevant to this dispute. Giraud transferred title to the property to Frank Jouglard in consideration for Jouglard's having satisfied a mortgage obligation which Giraud owed.

■ Irick claims that there was a tripartite agreement among Giraud, Jouglard and himself, in which it is provided that he would purchase Giraud's equity by paying Giraud's creditors $60,000.00, and he would subsequently repay Jouglard for the amounts Jouglard had expended on Giraud's behalf, at which time Jouglard would give Iricks a warranty deed. This agreement, according to Irick, was reduced to writing, and Irick stated in his deposition that he possessed a copy of the agreement, but he did not produce it at the deposition, nor was it introduced at trial. That portion of Irick's deposition describing the agreement was properly excluded by the trial court because it was not the best evidence of the agreement nor did it fall within any of the exceptions to I.C. § 9–411. Thus, there is no competent evidence in the record regarding this alleged agreement, and consequently there is no competent evidence in the record to substantiate Irick's claimed transformation from receiver to owner of the property.

Irick frequently alleges in his deposition that he feels that he has invested at least $60,000.00 into the property. He states: "I got receipts and checks and everything on all of this, but I didn't know whether to bring them in [to the deposition] or not." Again, the result is an unsubstantiated claim with no documentation of that claim in the record. Even if Irick had produced receipts demonstrating that he had invested $60,000.00 in improvements and in paying Giraud's obligations, there is no competent evidence in the record to indicate that these expenditures were made toward the purchase of the property.

The testimony indicates that in 1966, Irick negotiated with others to form a corporation for the purpose of converting the property into a recreation and resort area. Lava Hot Springs Resort, Inc., was incorporated shortly thereafter, and Harold Irick became a major shareholder and a member of the board of directors of the enterprise. The corporation obtained a warranty deed from Frank and Cecelia Jouglard, purporting to convey the disputed property to Lava Hot Springs Resort, Inc., which recites that it was drafted on August 18, 1966, executed on December 2, 1968, and recorded in Bannock County, Idaho, on September 25, 1969. Irick stated in his deposition that he never did obtain a deed from Jouglard, but that the Jouglard-Lava Hot Springs Resort, Inc., conveyance "just bypassed" him. Throughout these proceedings, Lava Hot Springs Resort, Inc., has contended that its deed from Jouglards conveyed to the corporation full title to the property, and that it has paid Jouglards for the property (the record is unclear regarding how much Lava Hot Springs Resort, Inc., paid Jouglards for the property). Iricks executed a quitclaim deed to Lava Hot Springs Resort, Inc., recorded July 30, 1968, which Irick himself explained as merely a formality to remove a possible cloud on the title and which Lava Hot Springs Resort, Inc., was required to obtain before it could obtain the mortgage that is the subject of this action.

Harold Irick alleged in his deposition that Lava Hot Springs Resort, Inc., was to have paid him for his interest in the property, in addition to the amounts it paid to Jouglard. He alleges that this was the understanding at the time of the formation of the corporation. There is no written memorandum of such an agreement in the record, and it is not clear from Irick's testimony whether a written memorandum of this agreement is supposed to exist. Robert Wilkinson, president of Lava Hot Springs Resort, Inc., from 1967 to 1971, testified at trial that he had no knowledge of such an agreement, nor did he understand that Lava Hot Springs Resort, Inc., had obligated itself to purchase from Irick his alleged interest in the property. In his testimony, Reed Bowen, attorney for Lava

Hot Springs Resort, Inc., until 1971, acknowledged that by the terms of a pre-incorporation agreement, a copy of which was excluded from evidence, Harold Irick was to have received $125,000. It is unnecessary for us to decide whether the terms of that pre-incorporation agreement would have been binding on Lava Hot Springs Resort, Inc., since that agreement was not in evidence and none of the parties in this proceeding contends that it was enforceable. Further, assuming that there had been an agreement that Harold Irick was to have received $125,000, there is no indication that this amount would have been consideration for his claimed interest in the property.

As the foregoing recital of testimony indicates, there is nothing in this record beyond Harold Irick's confused, often contradictory and inadmissible, and mostly self-serving testimony in his deposition to support the findings and conclusions of the trial court. It is of note that Irick never made any effort throughout these proceedings to appear and assert these claims. His judgment creditors maintained that they stood in the shoes of Harold Irick, on the basis of their recorded judgments (I.C. § 10–1110, and 26 U.S.C. § 6321), and were entitled under these provisions to assert his claims on his behalf. However, their position is tenable only to the extent that Harold Irick owned the real property in dispute. If Harold Irick had a cause of action against Lava Hot Springs Resort, Inc. —or anyone else—his judgment creditors would not be entitled to assert that claim by force of their recorded judgments alone, but would be required to institute supplemental proceedings under I.C. § 11–507; see *Whitehead v. Van Leuven*, 347 F.Supp. 505 (D.C.Idaho, 1972).

The law presumes that the holder of title to property is the owner thereof; *Hawe v. Hawe*, 89 Idaho 367, 406 P.2d 106 (1965); *Shurrum v. Watts*, 80 Idaho 44, 324 P.2d 380 (1958). The effect of this presumption is that:

"[O]ne who would claim the ownership of property of which the legal title stands of record in another, or that the same is held by such person in trust for the one so claiming, must establish such claim by evidence that is clear, satisfactory and convincing." *In re Capolino's Estate*, 94 Cal.App.2d 574, 210 P.2d 850 (1949), at 852, quoting *Redsted v. Weiss*, 73 Cal.App.2d 889, 167 P.2d 735 (1946).

*See also Jeffrey v. Grosvenor*, 261 Iowa 1052, 157 N.W.2d 114 (1968). It is undisputed that title to the real property in this case was in Frank and Cecelia Jouglard who transferred it to Lava Hot Springs Resort, Inc. Therefore, Irick and the parties claiming through Irick must have presented "clear, satisfactory and convincing" proof of Irick's ownership in order to prevail. We recognize that the determination of whether that burden of proof has been carried is ordinarily for the trial court, *In re Capolino's Estate, supra*, but where, as here, the record does not contain sufficient evidence to sustain the trial court's findings, this Court will set them aside. *Blankenship v. Myers*, 97 Idaho 356, 544 P.2d 314 (1975); *In re Estate of Bogert*, 96 Idaho 522, 531 P.2d 1167 (1975). We conclude that the record does not support the finding that Irick, or the parties claiming through Irick, proved that he owned an interest in the property and that Lava Hot Springs Resort, Inc., agreed to pay him for such an interest. We must conclude that the trial court's findings on these issues are not supported by substantial evidence and are erroneous, and we set them aside. I.R.C.P. 52(a).

3. *Disposition.*

The following provisions of the judgment of the trial court are reversed:

1. awarding Fred N. Coats a first lien against the real property in dispute based upon his judgment against Harold Irick;

2. awarding Harold and Norma Irick a vendor's lien in the amount of $125,000.00 on the property;

3. declaring that the Shuler Bros.' judgment lien against Iricks in the amount of $5,500.00 can be satisfied from the pro-

**580**

ceeds secured under Iricks' vendor's lien which is set aside in subparagraph 2 above;

4. declaring that the tax liens of the United States of America against Harold and Norma Irick can be satisfied from the proceeds secured under Iricks' vendor's lien, which is set aside under subparagraph 2 above;

5. and declaring that either Shuler Bros. or the United States may in a representative capacity foreclose the vendor's lien of Harold and Norma Irick, which is set aside under subparagraph 2 above.

In light of our disposition of the appeal of Lava Hot Springs Resort, Inc., we need not reach the issues raised in the appeal of the United States, No. 11703. However, our ruling here is without prejudice to the rights of the judgment creditors of the Iricks to proceed against Irick for the satisfaction of their judgments.

Reversed and remanded with directions to the trial court to enter judgment in accordance with this opinion.

Costs to appellant Lava Hot Springs Resort, Inc., in appeal No. 11813. No costs in appeal No. 11703.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.