612 P.2d 1192

**M. K. TRANSPORT, INC., a corporation, Plaintiff-Appellant,**

v.

**Louis GROVER, dba Grover Trucking, also dba Louis Grover Trucking, Defendant-Respondent.**

**No. 12533.**

Supreme Court of Idaho.

June 13, 1980.

Robert C. Huntley, Jr., Racine, Huntley & Olson, Pocatello, for plaintiff-appellant.

E. W. Pike, Albaugh, Smith, Pike & Martin, Idaho Falls, for defendant-respondent.

BAKES, Justice.

Plaintiff appellant M.K. Transport, Inc. (M.K.), an Idaho corporation, and defendant respondent Louis Grover, dba Louis Grover Trucking (Grover), entered into a written contract in March 1971. The contract provided that M.K. would purchase trucks and trailers and hire and supervise drivers for the equipment. Grover agreed to lease the equipment from M.K., obtain hauling contracts and dispatch the M.K. trucks pursuant to Grover's Idaho and Interstate Com-

merce Commission authority to transport lumber products throughout Idaho and the intermountain west. M.K. agreed to register its trucks under Grover's name, subject to its right to change the registration at any time and for any reason. Grover agreed to pay M.K. 88% of the gross revenue received from operation of M.K.'s trucks as the revenue was received. The agreement was to be effective for three years, subject to the parties' right to terminate by mutual consent upon thirty days written notice.

M.K. purchased several trucks and trailers for use in the lease arrangement. Revenue from the arrangement was not, however, up to the parties' expectations, and Grover and M.K. made efforts to increase the average daily mileage of M.K.'s trucks in an attempt to increase gross revenue. Grover contended that M.K., new to the trucking business, had hired incompetent drivers and was not obtaining enough mileage from them to generate an adequate financial return from the operation. M.K. made some efforts to improve its operations, at one point hiring as "truck boss" an experienced Grover employee. Meanwhile, by September, 1972, Grover had fallen more than $123,000 behind in payments due M.K. under the agreement.

In early August, 1972, without notifying M.K., Grover began taking 15% of the gross income from the M.K. operation in lieu of the 12% specified in the written agreement. On September 15, 1972, M.K. learned of Grover's action and protested Grover's unilateral attempt to modify the written agreement. On September 16, M.K. began exploring the possibility of obtaining an I.C.C. permit in its own name in order to operate its trucks independently of Grover's authority, and on September 17, 1972, M.K. ordered its trucks to cease further hauling for Grover.

On September 21, 1972, M.K. and Grover attempted to settle their differences. At this meeting Grover told M.K. that the return from the lease arrangement was lower than anticipated and that if M.K. did not agree to allow Grover 15% of the proceeds derived from operation of M.K.'s trucks, Grover would not continue working with M.K. under the contract.

A second meeting occurred on September 23, 1972. M.K. stated that it would not operate under the contract with Grover unless Grover agreed (1) to allow M.K. to obtain its own operating authority; (2) to immediately pay M.K. all moneys past due under the contract; and (3) to accept 12% of the revenues, as specified in the written contract, and not 15% as demanded by Grover. Grover refused to accept the first condition proposed by M.K., and no resolution of the dispute was achieved.

On either September 25, or 26, 1972, Grover learned that M.K. was seeking support from some of Grover's customers for an application by M.K. for independent I.C.C. trucking authority. Grover was told that M.K. had represented to Grover's customers that Grover was insolvent and would no longer be able to provide trucking service as it had in the past. Upon hearing this, Grover had its vehicle plates and operating permits pulled from the M.K. trucks in its yard. No further performance under the contract was thereafter undertaken by either party. In early October the two sole shareholders in M.K. formed a new corporation, Empire Leasing, Inc., and transferred M.K.'s entire inventory of trucks and trailers to Empire.

Plaintiff M.K. filed this action against Grover seeking moneys past due in an action for accounting under the lease arrangement; collection of a promissory note issued by Grover to M.K. as part payment for moneys past due under the lease agreement; and general and punitive damages for Grover's alleged breach of the lease agreement.

Defendant Grover counterclaimed against M.K., requesting an accounting under the lease agreement, damages for M.K.'s alleged breach of the lease agreement, and damages for loss of revenue alleged to have resulted from M.K.'s efforts to compete with Grover in the trucking business. Grover also sought an injunction against M.K.'s operation of a trucking service in competition with Grover.

Two separate trials were held on the claims. An accounting trial was held on February 2, 1973, in which M.K. recovered an amount the trial court found due M.K. from Grover for Grover's lease of M.K.'s equipment during the period the parties' agreement was operative. On January 28 and 29, 1976, and March 12, 1976, a second trial was held at which the issues to be decided were (1) who, if anyone, breached the agreement, and (2) what direct damages, if any, resulted from the breach. The questions of the damages suffered by Grover as a result of plaintiff M.K.'s efforts to acquire independent trucking authority and Grover's request for injunctive relief were left by the district court for later determination.

The trial court, sitting without a jury, found that defendant Grover breached the contract by not promptly paying plaintiff M.K. amounts due under the agreement and by unilaterally changing the percentage of the revenues due Grover from 12% to 15%. The court also found that plaintiff M.K. had breached the agreement by attempting to obtain independent I.C.C. licensing authority to enable M.K. to operate its trucks independently of Grover. The district court concluded that after the September 23, 1972, meeting "the parties simultaneously rescinded and abandoned the written agreement" and therefore neither party was entitled to damages for breach of contract.

Appellant M.K.'s principal argument on appeal is that the district court erred in concluding that each party breached the contract and that the parties' conduct evidenced an intent to rescind and abandon the written agreement, resulting in neither party being liable for damages. M.K. asserts, first, that there is no evidence in the record to support a conclusion that the contract was rescinded and, second, that by seeking damages for breach of the agreement both parties elected to affirm the validity of the contract, necessarily precluding a finding of rescission by the court.

In concluding that the parties, by their conduct, rescinded or abandoned the written agreement, the trial court utilized a theory not raised by either party in their pleadings or at trial. We can find no indication that either party considered the theory of rescission to be at issue in the trial. The record, in fact, suggests otherwise.[1] It is our conclusion that the district court erred in concluding that the parties had rescinded or abandoned their agreement.

Respondent Grover argues that under I.R.C.P. 54(c)[2] the trial court was authorized to grant the remedy of rescission, even if not pleaded, if warranted by the evidence produced at trial. Grover further relies upon I.R.C.P. 15(b)[3] which provides in part that:

1. At commencement of the trial, the following colloquy occurred between counsel and the bench:

"COURT: By stipulation through a pre-trial conference, Counsel has noted and I believe we should have it noted in the record that the only issue with which we will be concerned with today is to the issue as to the breach of the contract between the parties under date of March 15th, 1971. There are respective claims arising out of this breach and the issue will be to determine who breached the contract and the damages flowing therefrom as to either party; correct?
"MR. PIKE: That is the understanding of the defendant, Your Honor.
"COURT: Mr. Huntley, is that your understanding?
"MR. HUNTLEY: I believe that is basically correct, Your Honor. In other words, the issues that are being reserved—we are trying the direct damages as a result of the breach

of the contract on our complaint and the defendant's counterclaim."
Nowhere does the record indicate that the issue of rescission was addressed or even considered by either party.

2. "RULE 54(c). DEMAND FOR JUDGMENT. —A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

3. "RULE 15(b). AMENDMENTS TO CONFORM TO THE EVIDENCE.—When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. . . ."

■ Under the Idaho Rules of Civil Procedure, the trial court was not limited to deciding the case on the issues as framed by the pleadings. However, the court's authority under I.R.C.P. 15(b) and, consequently, I.R.C.P. 54(c), to determine a case upon unpleaded theories is limited by the proviso in I.R.C.P. 15(b) that for the court to consider unpleaded issues those issues must have been "tried by express or implied consent of the parties . . . ." Although I.R.C.P. 15(b) specifies that where a theory of recovery is tried fully by the parties, the court may base its decision on that theory and deem the pleadings amended accordingly, and issue not tried by either express or implied consent cannot be the basis for a decision. *See, e. g.,* 6 Wright & Miller Fed. Practice & Procedure, Civil § 1493 (1971).[4]

■ The requirement that the unpleaded issues be tried by at least the implied consent of the parties assures that the parties have notice of the issues before the court and an opportunity to address those issues with evidence and argument. *Cook v. City of Price, Carbon County, Utah,* 566 F.2d 699 (10th Cir. 1977); *Cox v. Fremont County Public Building Authority,* 415 F.2d 882 (10th Cir. 1969); *Otness v. United States,* 23 F.R.D. 279 (D.Alaska 1959).

"Implied consent to the trial of an unpleaded issue is not established merely because evidence relevant to that issue was introduced without objection. At least it must appear that the parties understood the evidence to be aimed at the unpleaded issue." *MBI Motor Co., Inc. v. Lotus/East, Inc.,* 506 F.2d 709, 711 (6th Cir. 1974).

Where nothing in the record indicates that an unpleaded issue was litigated at trial, it is error for the trial court to base its decision on the unpleaded issue. *See, e. g., Browning Debenture Holders' Committee v. Dasa Corp.,* 560 F.2d 1078 (2d Cir. 1977); *MBI Motor Co., Inc. v. Lotus/East, Inc., supra; Freitag v. The Strand of Atlantic City,* 205 F.2d 778 (3d Cir. 1953). Although some of the evidence in the trial record might support the trial court's conclusion that the parties' conduct evidenced an intent to mutually rescind their contract, that evidence was also relevant to the parties' respective claims of breach of contract.[5] Had the parties considered the issue of rescission to be before the court, they may have been able to present other evidence,

---

pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

4. The relevant provisions of the Idaho Rules of Civil Procedure are virtually identical to their counterparts in the Federal Rules of Civil Procedure. We find persuasive the cited federal authorities which discuss the Federal Rules.

5. An intent to rescind a contract may be inferred from acts or a course of conduct of the parties which clearly indicates a mutual understanding that a written contract has been abrogated or terminated. *See, e. g., Hisaw v. Ingram,* 94 Idaho 751, 497 P.2d 1052 (1972); *American Silver Mining Co. v. Coeur d'Alene Mines Corp.,* 94 Idaho 54, 480 P.2d 900 (1971); *Jensen v. Chandler,* 77 Idaho 303, 291 P.2d 1116 (1955); 2 Black, Rescission & Cancellation, §§ 528, 533–34 (2d ed. 1929). However, such a rescission is in effect a parol modification of the written agreement which in Idaho must be proven by clear and convincing evidence. *Prairie Development Co., Ltd. v. Leiberg,* 15 Idaho 379, 98 P. 616 (1908) ("clear and satisfactory" evidence); *cf. Lynch v. Cheney,* 98 Idaho 238, 561 P.2d 380 (1977) ("clear and convincing" evidence necessary to show oral compromise of a judgment); *Ballard v. Lava Hot Springs Resort, Inc.,* 97 Idaho 572, 548 P.2d 72 (1976) (clear satisfactory and convincing evidence required to show oral claim of ownership contrary to record title).

not relevant to the breach of contract claims, which might have tended to rebut any inferences that the parties had rescinded the agreement. Where the proof taken at trial is relevant to the pleaded issues in the case it would be manifestly unjust for the court to decide the case on theories not considered by the parties which may be inferentially proven by the evidence.

■■■ However, we cannot agree with appellant that as a result of the parties' claims for damages for breach of contract the court was necessarily precluded from deciding the case on a rescission theory, had that theory been properly before the court. Under modern pleading rules parties may seek alternative or different types of relief regardless of consistency or whether based on legal or equitable grounds or both. *See* I.R.C.P. 8(a)(1) and 8(e)(2).[6] Modern pleading practice no longer prohibits parties from seeking alternative forms of relief even if the remedies sought are inconsistent. For example, in an action on contract a plaintiff may claim both damages and restitution, with the ultimate election to be made by the court. *E. g., E. H. Boly & Sons, Inc. v. Schneider,* 525 F.2d 20 (9th Cir. 1975).

> "Whatever may be said for the common law doctrine of election of remedies before the advent of the Federal Rules of Civil Procedure, we are certain that there is no room for its application under applicable rules of procedure, according to which every pleading is a simple, concise statement of the operative facts on which

relief can be granted on any sustainable legal theory 'regardless of consistency, and whether based on legal or on equitable grounds or on both'; Rule 8(e)(1)(2) F.R.Civ.P., and, where the prayer or demand for relief is no part of the claim and the dimensions of the lawsuit are measured by what is proven." *Bernstein v. United States,* 256 F.2d 697, 706 (10th Cir. 1958), *cert. dismissed,* 358 U.S. 924, 79 S.Ct. 296, 3 L.Ed.2d 298 (1959).

The trial court's judgment is vacated and this case remanded for further proceedings consistent with the views expressed in this opinion. Costs are awarded to appellant. No attorney fees.

DONALDSON, C. J., and McFADDEN and BISTLINE, JJ., concur.

SHEPARD, J., dissents without opinion.

---

**6.** "RULE 8(a)(1). GENERAL RULES .OF PLEADING—CLAIMS FOR RELIEF.—A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) if the court be of limited jurisdiction, a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded."

"RULE 8(e)(2). TWO OR MORE STATE-MENTS OF CLAIM OR DEFENSE PERMISSI-

BLE.—A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both. All statements shall be made subject to the obligations set forth in rule 11."