480 P.2d 900

**AMERICAN SILVER MINING COMPANY, an Idaho corporation, Plaintiff-Appellant,**

v.

**COEUR D'ALENE MINES CORPORATION, an Idaho corporation, Defendant-Respondent.**

**No. 10368.**

Supreme Court of Idaho.

Feb. 8, 1971.

---

William A. Reagan, Coeur d'Alene, D. L. Holland, John A. Frankovich and R. Lewis Brown, Jr., Butte, Mont., for plaintiff-appellant.

James P. Keane, William F. Boyd, Kellogg, and Dennis E. Wheeler, Wallace, for defendant-appellee.

SHEPARD, Justice.

This case involves the interpretation of a contract, wherein one mining corporation agreed to explore the property of another mining corporation and receive one-half of the ore discovered as a result of such exploration. The parties entered into the contract in 1946, and in 1965, plaintiff-appellant gave notice that it was rescinding the contract. Plaintiff-appellant thereafter brought a quiet title action to remove any cloud upon the title to the property which might have resulted from the contract and defendant's explorations. The trial court found for the defendant, and plaintiff appeals. We affirm.

Plaintiff-appellant primarily assigns error in various findings and conclusions of the trial court as being unsupported by the evidence and we are therefore required to discuss the factual happenings during the period of 1946–1965 as revealed by the evidence.

In 1946, the defendant-respondent (hereinafter Coeur d'Alene Mines) owned mining claims in what is commonly known as the "Coeur d'Alene Mining District" in Shoshone County, Idaho. This area has a long history of mining activity and exploration. Some of such exploration has resulted in fantastically successful mining strikes and there have been and still are a number of successful and profitable mining operations being carried on. Most of such operations are conducted at considerable

depths underground, some of them as deep as 7,000 feet.

Adjoining the mining property of Coeur d'Alene Mines on the south was and is the mining claim of plaintiff-appellant (hereinafter American Silver). To the south of the American Silver property is the mining claim of Silver Standard, and south of that property is the mining claim of Coeur d'Alene Consolidated Silver-Lead Mine. Contracts with all three of said corporations were entered into by Coeur d'Alene Mines, which in general provided for the exploration of those corporations' properties. Only the contract between American Silver and Coeur d'Alene Mines is at issue herein.

In 1946, Coeur d'Alene Mines had on its property a shaft 2,400 feet in depth, together with surface buildings and implements necessary to operate a producing mine. It was proposed that Coeur d'Alene Mines would continue sinking its shaft to a depth of 2,800 feet and then drive a crosscut horizontally into the mining claims of the other mining companies. The contract between the parties hereto provided that any ore found upon or within the claims of American Silver would be divided equally between the parties. However, if Coeur d'Alene Mines were to abandon the contract, it would receive only 10 per cent of the ore so discovered. In addition, Coeur d'Alene Mines would do all the necessary assessment work on the properties it was exploring.

Assessment work is "(t)he labor or improvements that a miner is required to perform or make upon his unpatented claim in order to prevent its appropriation by others, and thus maintain his right to possession * * *". The American Law of Mining, Volume 2, § 7.1 at 101. The purpose of assessment work is to assure good faith and diligence and thus prevent a claimant from locating numerous mining claims and then holding such claims without working them, preventing others from developing the property. Chambers v. Harrington, 111 U.S. 350, 4 S.Ct. 428, 28

L.Ed. 452 (1884). See also Udall v. Oil Shale Corp., 406 F.2d 759, 761 (10th Cir. 1969), cert. granted sub nom. Hickel v. Oil Shale Corp., 396 U.S. 817, 90 S.Ct. 77, 24 L.Ed.2d 68 (1969); Note, "Annual Assessment Work as Notice to Prospectors," 6 Utah L.Rev. 391 (1959). Such assessment work is required in the State of Idaho by virtue of I.C. §§ 47–606, 47–618 and 47–619. These provisions merely supplement the federal statutory provisions which require such work. 17 Stat. 92 (1872), 30 U.S.C. § 28 (1958).

During the years in question, Coeur d'Alene Mines did sink its shaft the additional 400 feet and did drive the crosscut in the direction of and into the American Silver claims at the 2,800 foot level. In addition, crosscutting and other tunneling were performed within the vertical boundaries of the Silver Standard property and the Coeur d'Alene Consolidated Silver-Lead Mines. From the crosscut shafts certain veins of ore were found and explored. In addition, certain diamond drilling was performed. Assessment work was performed by Coeur d'Alene Mines on the properties of the other corporations and proofs of labor were filed. The assessment work by Coeur d'Alene Mines was continued up to the time of the initiation of this suit.

In May of 1953, the parties to the 1946 contracts entered into a new agreement with Polaris Mining Company. Under that 1953 contract the previous 1946 contracts were to be held in abeyance and to return to full force and effect at such time as Polaris might abandon or surrender the 1953 contract. Polaris, a subsidiary of Hecla Mining Company, was thereafter merged into Hecla and on June 3, 1960, Hecla abandoned and surrendered the 1953 agreement. At the time of the Hecla abandonment of its contract, the facilities of Coeur d'Alene Mines were not in condition for continued operation and Coeur d'Alene Mines sued Hecla therefor and received a judgment in the amount of approximately $129,000.00.

In 1964, Coeur d'Alene Mines entered into another agreement with American Smelting & Refining Company which allowed that company the use of Coeur d'Alene Mines' shaft and the ground workings.

The parties hereto shortly thereafter fell into disagreement over the terms of the 1946 contract between themselves and American Silver filed this action. American Silver contended that the contract terms were uncertain and ambiguous; that the contract required Coeur d'Alene Mines to explore all of American Silver's property, not merely at the 2,800 foot level; that the 2,800 foot level had not been thoroughly explored as required by the contract; that the contract had been abandoned by Coeur d'Alene Mines; that American Silver had not been benefited by the exploration work done by Coeur d'Alene Mines; that the contract of August 31, 1964 between Coeur d'Alene Mines and American Smelting & Refining Company violated the 1946 contract between the parties hereto; and that Coeur d'Alene Mines was not entitled to any interest in any of the commercial ore discovered by virtue of the work of Coeur d'Alene Mines or others under the 1946 contract. The trial court made findings contrary to American Silver's allegations and entered judgment for Coeur d'Alene Mines. These findings are assigned as error as not being supported by the evidence and thus not supportive of the judgment.

It should be first stated that upon appeal

"We approach this case with full recognition of the long established rule of this court that our province is to examine the record in the light most favorable to the judgment and that when findings of the trial court are supported by competent substantial evidence they are binding and conclusive on appeal." Olsen v. Hawkins, 90 Idaho 28, 408 P.2d 462 (1965)

Thus, even though there might well be conflicting evidence presented to the trial court, so long as there is competent and substantial evidence which will support the findings, such findings must be sustained. Clayton v. Jones, 91 Idaho 87, 416 P.2d 34 (1966).

We consider first the contention of American Silver that Coeur d'Alene Mines was to explore more of American Silver's property than the 2,800 foot depth area. The contract must be taken as the best evidence of the intentions of the parties. That contract speaks first of the existence of the 2,400 foot shaft of Coeur d'Alene Mines and then states:

"Although extensive exploration work has been done in and upon the claims owned by the party of the second part [American Silver] none of such work has been done at a depth which is comparable to the depth of the first party's [Coeur d'Alene Mines] shaft and other underground workings * * *."

The contract further states:

"The second party's ground could be advantageously and economically explored and developed *at depth* from and to the openings of the property of the first party * * *." (Emphasis added)

And that, therefore

"The party of the first part hereby agrees that it will drive a crosscut from its shaft in a southwesterly direction * * * such crosscut to be of sufficient length to permit the exploration therefrom of any and all veins or vein systems which may be found to exist * * *. It is understood and agreed that the aforementioned crosscut shall be driven by the party of the first part from its said 2800 foot level * * *."

The contract itself provides ample support to the finding of the trial court that the intention of the parties was to explore the property of American Silver at the 2,800 foot level and we reject the assertion of American Silver, as did the trial court, that all levels of the property were to have been explored and, particularly, we do so in view of the foregoing recital that "extensive exploration work" had been done

by American Silver on other levels of its property.

American Silver then contends that even if the above construction of the contract is correct, it was error for the court below to find that the 2,800 foot level of American Silver's property had been thoroughly explored within the meaning of the contract. In support thereof American Silver cites testimony by its witnesses that the exploration should have been performed in a different manner. However, other expert witnesses who were called by Coeur d'Alene Mines testified that the property had been correctly explored. The contract itself appears to have specifically recognized the importance of the economic factor in the minds of the parties regarding the contemplated exploration work. The contract further specifically stated that the exploration would be under the direction and supervision of Coeur d'Alene Mines and that the "decision as to character of such exploration work and extent thereof shall rest with the party of the first part [Coeur d'Alene Mines]."

Coeur d'Alene Mines points to the following facts established at trial: that it did sink its shaft an additional 400 feet in depth and drove the crosscut into the claims of American Silver and further performed 8,500 feet of crosscutting and drifting within the vertical boundaries of the American Silver property. Also, Coeur d'Alene Mines performed 6,219 feet of diamond drill work within the vertical boundaries of American Silver. Additional work was performed in exploring the so-called "Siderite Vein" which was claimed by Coeur d'Alene Mines, but at the 2,800 foot level was located within the vertical boundaries of American Silver property. Coeur d'Alene Mines further performed 3,570 feet of drifting and crosscutting and 7,984 feet of diamond drilling within the vertical boundaries of the Silver Standard property, however in an area where American Silver claimed ownership of ore by reason of extralateral rights. During the time of the existence of the Polaris contract, there

was 2,700 feet of drifting and crosscutting and 3,270 feet of diamond drilling within the vertical boundaries of American Silver. Also, during the time of the Polaris contract, 3,700 feet of drifting and crosscutting and 6,800 feet of diamond drilling took place within the vertical boundaries of the Silver Standard property, however within an area where American Silver claimed ownership by reason of extralateral rights.

Coeur d'Alene Mines also points to the following facts established at trial: that Coeur d'Alene Mines expended $442,298.70 within the area of American Silver's vertical boundaries and $259,462.85 in area wherein American Silver claimed extralateral mineral rights; that American Smelting & Refining Company, as the agent of Coeur d'Alene Mines, expended $293,185.00 primarily for shaft expenditures in the Coeur d'Alene Mines' shaft. It will be recalled that Coeur d'Alene Mines was required by the terms of the 1946 agreement to do the assessment work on the American Silver claims. It had been agreed between the parties that the assessment work requirement on American Silver's property could be met and satisfied by work done in the Coeur d'Alene Mines shaft, since that work was presumably done for the benefit of all the mining claims. Therefore, to some extent, the moneys expended on the Coeur d'Alene Mines shaft and facilities must be construed as having benefited American Silver.

American Silver contends certain areas within the limits of the American Silver properties were not explored. While such was a fact established at the trial, the reasons for the lack of exploration of the particular areas varied considerably as between the witnesses testifying for Coeur d'Alene Mines and the witnesses testifying for American Silver. There was sharp disagreement between such witnesses as to the directional trends of potential veins and the significance, or lack thereof, of the existence of bleached rock. It is sufficient to say that the lack of probability of significant mineral discovery in the areas

which were not explored was the subject of sharp disagreement between witnesses of Coeur d'Alene Mines as contrasted with the witnesses of American Silver.

The evidence indicated that the exploration work carried out by Coeur d'Alene Mines resulted in the discovery of certain vein structures. Some of these veins, such as the North Vein and the Siderite Vein, although located within the boundaries of American Silver, were claimed by Coeur d'Alene Mines under extralateral rights. Vein structures denominated "A," "B" and "C" were discovered within the Silver Standard ground but were claimed by American Silver as being within their extralateral rights area. Also discovered through the exploration was the Wire Silver Vein, which was located at or near the boundary line of American Silver and Silver Standard and which vein was claimed by both American Silver and Silver Standard. In contrast with the above work performed by Coeur d'Alene Mines or its agent, American Silver's only testimony was that from 1946 to 1966 it expended approximately $2,000.00 for development of its property.

We hold therefore that there was ample evidence upon which the trial court could base its findings of fact that the 2,800 foot level of American Silver's property had been explored by Coeur d'Alene Mines in conformity with its duties under the 1946 contract. Although the evidence thereon was at times sharply conflicting, the resolution of such conflict in the testimony is for the trier of the fact, in this case the trial court.

■ The trial court held that since there was no breach of the contractual duty on the part of American Silver to thoroughly explore the 2,800 foot level of American Silver's property, American Silver was not entitled to rescind the 1946 contract because of Coeur d'Alene Mines breach. Both parties concede the law to be that, in rescission, the party seeking to rescind must restore the other (in this case Coeur d'Alene Mines) to the status quo.

American Silver, however, contends that it is not subject to that rule since the performance by Coeur d'Alene Mines has conferred no benefit upon American Silver.

As hereinbefore pointed out, Coeur d'Alene Mines performed the necessary assessment work on American Silver's property, thereby preserving its rights to its unpatented claims. That work took place between the years 1946 to 1953 and 1960 to 1967. Although there was again sharp conflict in the testimony of expert geologists, the trial court concluded that American Silver learned a great deal more about the geology of its property and was benefited by the discovery of new veins previously unknown. Testimony, although contraverted, also indicated a substantial enhancement of the value of American Silver's property as a result of the exploration work and the discovery of the vein structures.

■ We hold therefore that there was ample and sufficient evidence supporting the trial court's findings of fact that the exploration work conferred a benefit on American Silver.

We turn now to the contention of American Silver that Coeur d'Alene Mines has abandoned the contract. We have herein affirmed the correctness of the trial court's holding that Coeur d'Alene Mines was only required to explore the property of American Silver at the 2,800 foot level and that such level was explored within the meaning of the contract. Hence, as to that portion of the contractual duties of Coeur d'Alene Mines, there was no "abandonment" of the contract. Mr. Wafford Conrad, an officer of American Silver, testified that he had negotiated the Polaris contract of 1953 on behalf of American Silver. That contract recited that Coeur d'Alene Mines had performed extensive exploration work in American Silver's property and that Coeur d'Alene Mines had fully complied with all of the terms, conditions and work requirements of the 1946 contract. Conrad also testified that he did not contend that the 1946 contract was

void prior to 1953. The period 1953 to 1960 can have no significance in the dispute between the parties hereto since it was agreed by all parties in the 1953 Polaris agreement that the 1946 contract was to be held in abeyance and inoperative, so long as the Polaris contract remained in effect.

Following Hecla's abandonment of the Polaris contract in June of 1960, Coeur d'Alene Mines has done no work underground within the vertical boundaries of American Silver's property, nor in any property in which American Silver has claimed extralateral rights. During the period 1960–1967, Coeur d'Alene Mines work consisted of work within its shaft and own workings and assessment work performed on the surface of American Silver's property. As hereinbefore mentioned, American Silver has stipulated that Coeur d'Alene Mines work on its own shaft would be deemed sufficient to satisfy the annual assessment requirements on American Silver's property.

■ Abandonment is a matter of intent with corresponding conduct and may be shown by surrounding facts and circumstances. Union Grain and Elevator Co. v. McCammon Ditch Co., 41 Idaho 216, 240 P. 443 (1925). The trial court held that the conduct of Coeur d'Alene Mines was inconsistent with an intent to abandon, and based on the foregoing facts we find no error in that finding of the trial court, nor in its conclusion that Coeur d'Alene Mines had not abandoned the 1946 contract.

■ This brings us to the contention of American Silver that the 1964 contract entered into between Coeur d'Alene Mines and American Smelting & Refining Company (hereinafter Asarco) constituted a breach of the 1946 contract between the parties hereto. American Silver contends that under the 1946 contract American Silver was to have the right to use certain of Coeur d'Alene Mines facilities to continue exploration or mining in its [American Silver's] property if it should desire to do so

when Coeur d'Alene Mines discontinued its exploration.

The trial court determined that under the terms of the 1964 Asarco contract, which was "subject to the terms of the * * * agreement dated May 23, 1946 between Coeur d'Alene and American Silver Mining Company," such contract constituted neither a breach nor abandonment of the 1946 contract. It should be pointed out that American Silver is not a party to the 1964 Asarco contract. The trial court further found that since the Asarco contract was "subject to" the terms of the 1946 contract, Coeur d'Alene Mines intended to and could transfer to Asarco only such rights as remained in Coeur d'Alene Mines following the execution of the 1946 agreement. Under that 1946 agreement, Coeur d'Alene's shaft could be used in the following priorities: first by Coeur d'Alene Mines in exploring or mining its own properties; and secondly, by American Silver for exploring or mining in American Silver's property; and thirdly, by Coeur d'Alene Mines for exploring or mining in properties other than its own. The trial court held that Asarco's usage of the shaft could not interfere unnecessarily with American Silver's right of use and that American Silver's rights under the 1946 contract were not impaired or rendered impossible by the Asarco contract. The Asarco contract adequately supports the findings and conclusions of the trial judge in holding that that contract constituted neither abandonment nor breach of the 1946 contract.

It is agreed by the parties hereto that American Silver has made no tender to Coeur d'Alene Mines to restore the parties to the status quo. We have affirmed the findings of the trial judge that there has been no breach or abandonment of the 1946 contract and therefore American Silver is not entitled to rescind without restoration of Coeur d'Alene Mines to the status quo. The trial court further found that Coeur d'Alene Mines by virtue of the 1946 contract and the work done thereun-

der is the owner of a one-half undivided interest in any commercial ore found in the vein system discovered by its work done under the 1946 contract.

Judgment affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, DONALDSON and SPEAR, JJ., concur.