801 P.2d 52

**Carol M. LIEBELT,**
**Plaintiff–Respondent–Cross**
**Appellant,**

v.

**Kenneth H. LIEBELT,**
**Defendant–Appellant–Cross**
**Respondent.**

**No. 17974.**

Court of Appeals of Idaho.

Nov. 15, 1990.

Cox, Ohman & Brandstetter, Idaho Falls, for appellant. John Ohman, argued.

Anderson, Pike & Bush, Idaho Falls, for respondent. Dona A. Pike, argued.

WALTERS, Chief Judge.

In this appeal of a divorce action we are asked to decide whether the magistrate properly determined that the prenuptial agreement signed by the parties was void. The magistrate concluded, as did the district court on appeal, that the prenuptial agreement was invalid because the wife had not entered into the agreement freely nor had she understood the meaning of the agreement. The court further held that the agreement was not "put in place" by action of either of the parties during the marriage. We vacate the order dividing the parties' property.[1] We reverse the district court decision and consequently, the magistrate's determination, that the prenuptial agreement was invalid. We remand the case for further proceedings.

The facts are as follows. Ken and Carol Liebelt began dating in 1982. Each party twice had been previously married. In 1984, and in anticipation of marriage, the parties discussed the idea of a prenuptial agreement. However, no agreement was reached in 1984 and the parties split up. In 1986, the parties reunited and renewed their plans for marriage. Again the parties discussed whether to enter into a prenuptial agreement. Acting on his own, Ken sought the advice of an attorney with whom he had no previous dealings. The attorney drafted an agreement. Both parties reviewed, and made changes in, the draft agreement.

The parties set the wedding date for August 10, 1986. Ken insisted that the agreement be signed prior to the marriage although Carol was reluctant. Nonetheless, on August 8, 1986, both parties signed the prenuptial agreement, two days before their wedding. The marriage took place as planned on August 10.

The stated purpose of the agreement was to combine the separate property of the parties. The agreement provided that "[a]lthough the parties are combining the property for [that purpose], it is the intention of both parties that the property re-

---

1. The magistrate's findings and conclusions are made part of the divorce decree. By vacating the order relating to the parties' property, we do not disturb that part of the order granting the parties a divorce.

main separate property as defined by the Idaho law with each party having a one-half undivided interest in the property subject to this agreement." The agreement also provided that "[e]ach party shall execute, acknowledge and deliver any additional instruments that may be fully required to carry out the intention of this agreement...." The prenuptial agreement further set forth a method of dividing the property in the event of divorce. The procedure provided that an appraiser be hired, and that the parties alternately select items from their combined property until the value of the property on each side is substantially equal.

On April 19, 1987, Carol and Ken Liebelt separated. In her amended complaint Carol sought a dissolution of the marriage on the grounds of extreme cruelty or, in the alternative, because of irreconcilable differences.[2] Carol also alleged that the prenuptial agreement was ambiguous and was procured through undue influence by Ken and, as a consequence, should be held void. In his amended findings of fact and conclusions of law and decree of divorce, the magistrate held that

> the prenuptial agreement is invalid for the reason that the wife did not enter into said agreement freely or understand the meaning of said agreement.
>
> Furthermore, said agreement was not put in place by either of the parties by their actions during the marriage and said agreement has not been followed during the divorce proceedings.

The magistrate then ordered division of the couple's property under ordinary principles of community property law, confirming individual ownership of each party's separate property.

On appeal, the district court adopted the findings of fact of the magistrate and affirmed the magistrate's conclusions of law with arithmetic changes to the property division. Both parties appeal from this decision. Most of the issues raised by the parties involve the court's division of property under the community property law. Such divisions were necessary once the magistrate concluded that the prenuptial agreement was invalid. However, we reverse the decision holding that the prenuptial agreement was invalid on the grounds of duress. Consequently, we need not address the issues raised concerning the magistrate's division of property.

Ken's first issue challenges the magistrate's conclusion of law holding that "the wife did not enter into said agreement freely or understand the meaning" of the prenuptial agreement. Such a conclusion encompasses the following legal theories: duress, coercion, overreaching and undue influence.[3] Ken also contests the magistrate's conclusion that the agreement was not "put in place" by the parties. Although somewhat unclear, such a conclusion could be founded upon the theories of mutual rescission or abandonment. We address each issue in turn.

■ Initially we note the standards for review. Where, as here, the issues before the appellate court are the same as those considered by the district court sitting in an appellate capacity, we will review the trial record with due regard for, but independently from, the district court's decision. *Hentges v. Hentges*, 115 Idaho 192, 765 P.2d 1094 (Ct.App.1988). The issues raised by the parties involved mixed questions of law and fact. This Court will defer to findings of fact based on substantial evidence. *Staggie v. Idaho Falls Consolidated Hospital*, 110 Idaho 349, 715 P.2d 1019 (Ct.App.1986). However, this Court will review freely the conclusions of law reached by stating legal rules or principles and applying them to the facts found. *Id.* When examining, or determining the validi-

---

**2.** The magistrate later granted the divorce on the grounds of irreconcilable differences and dismissed the alternative count.

**3.** The magistrate's conclusion could also be interpreted to mean that the parties never had a meeting of the minds in order to enter into the prenuptial agreement. We do not believe this was intended by the magistrate. The reason for our belief is that the magistrate concluded that the parties did indeed enter into a prenuptial agreement. Such a conclusion is supported by both parties' freely acknowledged signatures on the document.

ty of, a prenuptial agreement we apply ordinary contract principles unless otherwise noted by statute or case precedent. *See, e.g., Vail v. Vail,* 117 Idaho 520, 789 P.2d 208 (Ct.App.1990).

 We first examine Ken's contention that the magistrate erred in holding that Carol did not enter into the prenuptial agreement freely. We conclude that the magistrate, in so holding, must have determined that Carol prevailed on the affirmative defense of duress. To be voidable on the grounds of duress, an agreement must not only be obtained by means of pressure brought to bear, but the agreement itself must be unjust, unconscionable, or illegal; the defense of duress cannot be predicated upon demands which are lawful, or the threat to do that which the demanding party has a legal right to do. *Newland v. Child,* 73 Idaho 530, 254 P.2d 1066 (1953). Generally, the demand by one party must be wrongful or unlawful, and the other party must have no means of immediate relief from the actual or threatened duress other than by compliance with the demand. *Inland Empire Refineries v. Jones,* 69 Idaho 335, 206 P.2d 519 (1949). The affirmative defense of duress may be established only by clear and convincing proof. *Van Meter v. Zumwalt,* 35 Idaho 235, 206 P. 507 (1922).

 In this case, the findings of fact which support the magistrate's conclusion that Carol felt compelled to sign the document was Ken's insistence on the agreement as a prerequisite to marriage. Refusal to proceed with the marriage was clearly within Ken's rights. The threat of a refusal to marry is not wrongful in the eyes of the law. In fact, such a threat received from a proposed marriage partner should put the potential spouse on notice that the agreement was of a serious nature and should be dealt with in a serious manner. The record shows that Ken repeatedly requested that Carol obtain independent legal counsel.[4] Furthermore, the record indicates that Carol participated in changes made in the draft agreement. Accordingly, based on the magistrate's findings of fact and the evidence contained in the record, we cannot conclude that Carol was incapacitated by duress when she signed the prenuptial agreement.

 Carol also asserted in her pleadings that Ken exhibited undue influence on her when she executed the contract. Undue influence is proven by showing that a person who has mental capacity to understand, and does understand, what he is doing, and is compelled by artifice, force or fear to do, what he does not want to do, and what he would not otherwise do but for such influence. *Kelly v. Perrault,* 5 Idaho 221, 48 P. 45 (1897). Similar to the reasons explained above, we are unable to conclude that threat of refusal to participate in the pending marriage would constitute "compelling by artifice, force or fear" to make Carol do what she did not want to do. We cannot conclude as a matter of law that type of influence was "undue."

 We next address Ken's contention that the magistrate erred in concluding that Carol did not understand the agreement when she signed it and that this is a legal basis for voiding the contract. Clearly, as evidenced by the parties' signatures on the contract, Ken and Carol intended to enter into a prenuptial agreement. *Suchan v. Suchan,* 106 Idaho 654, 682 P.2d 607 (1984). It is well established that a person who has executed a contract is presumed capable of understanding the nature and effect of such contract. *Olsen v. Hawkins,* 90 Idaho 28, 408 P.2d 462 (1965). As a corollary, a written contract cannot be avoided by one of the parties to it on the ground that he signed it without reading it and did not understand it; failing to read the contract or to have it read to him or to otherwise inform himself as to the nature, terms and conditions of the contract constitutes nothing more than gross negligence on the part of that party and is an insuffi-

---

**4.** In fact, Ken's attorney mailed a draft of the prenuptial agreement to another attorney who previously had done some legal work for Carol. That attorney then communicated to Carol his comments on the draft. However, it was never established that Carol and the attorney had an "attorney-client relationship" for the purpose of interpreting this document.

cient ground upon which to set the contract aside. *Milner v. Earl Fruit Company of the Northwest,* 40 Idaho 339, 345–46, 232 P. 581, 583 (1925); *see also Grant Lumber Co. v. North River Ins. Co. of New York,* 253 F. 83 (D.Idaho 1918) (holding that one signing a written instrument will be conclusively presumed to have had knowledge of its contents). One may be estopped by his own negligence to deny liability on a written instrument signed by him without having read it where he had an opportunity to read the instrument and was not fraudulently dissuaded or prevented from reading it. *West v. Prater,* 57 Idaho 583, 67 P.2d 273 (1937). Again, the record indicates that Ken repeatedly requested Carol to participate in the drafting of the agreement—which she did. Ken also advised her to seek the independent advice of legal counsel. To the extent the magistrate's determination of Carol's lack of understanding the prenuptial agreement is a finding of fact, we hold that such a finding was not based on substantial evidence and constituted clear error. Likewise, the magistrate's determinative conclusion—i.e., that the contract was void because the wife did not understand the effect of the prenuptial agreement—was erroneous, and must be reversed as a matter of law.

We next address Ken's argument that the magistrate erroneously held that the agreement was void because the parties failed to "put in place" the terms of the agreement. Again, we are unable to conclude as a matter of law that failure to "put in place" a contract is sufficient for determining that the contract was void. The words used by the magistrate imply that the parties either rescinded or abandoned the prenuptial agreement. Where one party to a contract has refused to comply with the contract, and the other party has acquiesced in such refusal, a rescission by consent is implied. *Copen-*

haver v. Lavin, 92 Idaho 681, 448 P.2d 774 (1968); *Jensen v. Chandler,* 77 Idaho 303, 291 P.2d 1116 (1955). A contract is abandoned where the acts of one party are inconsistent with the existence of the contract and are acquiesced in by the other party. *Russell v. Russell,* 99 Idaho 151, 578 P.2d 1082 (1978). Abandonment of the contract is a question of intent. *American Silver Mining Co. v. Coeur d'Alene Mining Corp.,* 94 Idaho 54, 480 P.2d 900 (1971). Such intent can be shown by corresponding conduct as demonstrated by surrounding facts and circumstances. *Id.* In other words, abandonment may be implied from the parties' actions. *Copenhaver v. Lavin, supra.* However, it is unapparent from the record in this case whether either of these theories was argued at trial.[5] The record does not clearly indicate whether the parties intended to rescind or abandon the contract. When the record on appeal does not reveal an obvious answer to relevant factual questions, the appellate court may not properly make those findings. *Sherry v. Sherry,* 111 Idaho 185, 722 P.2d 494 (Ct.App.1986). Accordingly, we remand this case for additional findings. We remind the trial court that it is within its discretion to determine whether the existing record is sufficient, or should be supplemented, in order to make the required findings of fact and conclusions of law on remand. *Sherry v. Sherry, supra.* In the event the trial court determines that the agreement was valid, the court is directed to divide the assets of the parties in accordance with the parties' intentions as governed by the prenuptial agreement.

We reverse the trial court's conclusion that Carol did not enter into the agreement freely. We likewise reverse the conclusion that Carol did not understand the agreement when she signed it. We remand the case for further findings of fact and con-

5. Ken adamantly maintains that abandonment was never an issue at trial, rather he claims it was first argued during closing argument. Abandonment was not pled in the amended complaint. Furthermore, the trial transcript indicates that the parties waived their closing arguments in favor of providing briefs containing written arguments, to be submitted at a later date. These briefs were not made part of the appellate record. Consequently, we are unable to determine whether the abandonment theory was pursued during closing arguments. Accordingly, on remand, we direct the trial court to make a determination of whether abandonment was tried implicitly by the parties.

clusions of law consistent with this opinion. Costs to appellant, Kenneth Liebelt. No attorney fees allowed on appeal.

SWANSTROM, J., and SCHILLING, J., pro tem., concur.