825 P.2d 510

Eva MUNDELL, surviving widow of
Orie E. Mundell, Deceased,
Plaintiff–Appellant,

v.

William A. STELLMON, personal repre-
sentative of the Estate of Orie E. Mun-
dell, Deceased, Defendant,

and

James E. Mundell, surviving son of Orie
E. Mundell, Deceased; Mary Teats, sur-
viving daughter of Orie E. Mundell, De-
ceased; and Sandy Lindley, surviving
daughter of Orie E. Mundell, Deceased,
Defendants–Respondents.

In the Matter of the ESTATE OF
Orie E. MUNDELL, Deceased.

No. 18440.

Court of Appeals of Idaho.

Jan. 29, 1992.

James W. Givens, Lewiston, for plaintiff-
appellant.

Knowlton, Miles & Merica, and Randall,
Blake, Cox, Risley & Trout, Lewiston, for
defendants-respondents. Manderson L.
Miles, Jr. argued.

SILAK, Judge.

This action for declaratory judgment was
brought by Eva Mundell, surviving spouse
of Orie Mundell, to determine the owner-
ship of 450 beehives which Orie had given
to his son, James, prior to Orie's death.
Eva claims that Orie's transfers of the
beehives to James were unauthorized gifts
of the Mundells' community property, and
thus invalid transfers. James claims the
beehives were not gifts, but were validly
transferred to him as part of his compensa-
tion for working in the Mundells' beekeep-
ing business. After a hearing, the district
court determined that James had received
the beehives as compensation for his labor
in the Mundells' business, and thus, al-
though the beehives had been community
property, they were effectively transferred
to James in consideration for his work
which benefited the community business.
Eva appeals this decision, and for the rea-
sons stated below, we affirm.

The facts from which this case arises are
as follows. Orie and Eva Mundell owned
and operated a beekeeping business con-
sisting of approximately one thousand bee-

hives and the equipment to service those hives. The record indicates that during the years 1975 through 1978 the Mundells had difficulty retaining employees in their beekeeping business. The record also reveals various negative conditions of working in the beekeeping business which could explain why the Mundells had difficulty maintaining an experienced staff of workers. Work in the beekeeping business is seasonal, providing income for only about six months out of the year. The majority of the work, which requires a great deal of heavy lifting, is performed outdoors, during the hot summer months. The discomfort of performing arduous physical labor in summer heat is exacerbated by the full-body protective clothing beekeepers must wear. In spite of the protective clothing, workers are stung as many as five or six times a day while harvesting honey.

In 1978, James began working full-time in his father's and stepmother's beekeeping business. Because he had helped his father in the business throughout his youth, James had significant beekeeping experience which enabled him to provide valuable service to the Mundells' business. By the time of his father's death in July of 1988, James had worked continuously in the Mundells' beekeeping business for ten years. Initially, James was paid a salary of six hundred dollars per month. In the early 1980s, James's salary was increased to eight hundred dollars per month. In addition, James began receiving bonuses in the form of beehives. He received twenty-five to fifty beehives per year. Eventually, James was able to create new hives from his existing hives. He also purchased beehives from other beekeepers. Records submitted to the United States Agricultural Stabilization and Conservation Service (ASCS) indicated that James owned approximately 485 beehives in 1987.[1]

Tax returns prepared by Eva Mundell indicate that, at the time of Orie's death,

James owned twenty-five per cent of the total honey crop. At trial, however, Eva asserted that the hives had been gifts to James from Orie's half of the community property and were not compensatory bonuses distributed from the business.

Because this action was filed as a request for a declaratory judgment, it was tried before the court without a jury. The district court concluded that the beehives James received from the Mundells were compensation in addition to his wages for his work in the beekeeping business. The district court thus concluded that the beehives were not gifts but were validly transferred as compensatory bonuses for work which had benefited the marital community.

■ The dispositive issue in this case is whether the beehives were given to James as a compensatory bonus for his work in the business, or as a gift from his father. Because this is a mixed question of law and fact, we will uphold the factual findings made by the district court as long as those findings are not clearly erroneous. I.R.C.P. 52(a). Clear error will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence. *Rasmussen v. Martin*, 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App.1983). We will review freely any statements of law, as well as the court's application of the law to the facts as found. *Liebelt v. Liebelt*, 118 Idaho 845, 847, 801 P.2d 52, 54 (Ct.App.1990).

As a preliminary matter, we will discuss the definition of the word "bonus" as it applies to the analysis of this case. Both parties have cited the definitions listed in BLACK'S LAW DICTIONARY:

A consideration or premium paid in addition to what is strictly due. A gratuity to which the recipient has no right to make a demand.... A premium or extra or irregular remuneration in consider-

---

1. The Mundells filed applications for loans from the ASCS, which is an agency of the U.S. Department of Agriculture. In order to obtain the loan, the ASCS requires that the honey producer certify the number of hives that produced the honey and the ownership of the hives. ASCS records indicate that Orie and Eva Mundell claimed ownership of 1300 hives in 1984 and 1985, 1000 in 1986, and 1010 in 1987. ASCS records indicate that James Mundell had 185 beehives in 1984, 225 beehives in 1985, 300 beehives in 1986, and 485 beehives in 1987.

ation of offices performed or to encourage their performance.... An extra consideration given for what is received, or something given in addition to what is ordinarily received by, or strictly due, the recipient.... An addition to salary or wages normally paid for extraordinary work. An inducement to employees to procure efficient and faithful service.

BLACK'S LAW DICTIONARY 165 (5th ed. 1979) (citations omitted). Some of the above definitions imply that a bonus may be a gift if it is a mere gratuity given without consideration. On the other hand, if there is consideration on the part of the employee such as extraordinary work, efficient and faithful service, or continuous service for a specific length of time, the bonus takes on the character of payments made in consideration of services rendered to the employer, and the employer may even become bound contractually to pay the bonus. *See Leone v. Precision Plumbing and Heating of Southern Arizona,* 121 Ariz. 514, 591 P.2d 1002, 1003–1004 (App.1979); *Olsen v. Bondurant and Co.,* 759 P.2d 861, 864 (Colo.App.1988); *see also* 17 AM.JUR.2d *Master and Servant* § 84 (1970).

The district court found that James and Orie formed a contractual agreement that James would receive beehives as part of his compensation, and that the beehives which were transferred to James were given to him as bonuses to supplement his monthly wages. Though the district court did not make a specific finding, it is evident from the record that the bonuses were given, at least in part, as payment for ongoing service in an arduous, low paying, seasonal job. This evidence adequately supports the district court's finding that James's continuous service benefited the beekeeping business. In turn, this fact supports the district court's conclusion that the beehives were given to James as bonuses which were part of his total compensation.

The record also contains evidence showing that Eva was fully aware that James was receiving the beehives over the years of his employment. As noted in the presentation of facts above, Eva personally prepared James's tax returns which re-flected the fact that James was the owner of the beehives given to him by his father. In addition, the ASCS documents prepared and certified by Orie and Eva, as well as James and his wife, recorded the number of beehive colonies owned by the respective parties. These records support a finding that Eva knew of and acquiesced in the transfer of the beehives to James.

The above facts in the record constitute substantial evidence supporting the conclusion of the district court when it found that:

> The beehives received by James E. Mundell from Orie E. Mundell and Eva Mundell were additional compensation paid to James E. Mundell for his work in the bee operation and were part and parcel of the consideration for James E. Mundell's work in the bee operation for Orie E. Mundell and Eva Mundell. The beehives received by James E. Mundell from Orie E. Mundell were not gifts but were paid as bonuses to James E. Mundell because the marital community of Orie E. Mundell and Eva Mundell benefited from the work of James E. Mundell; and that all transfers of the beehives to James E. Mundell as bonuses were valid and binding.

Because we have concluded that the district court did not err in holding that the beehives were given to James Mundell, per oral contract, as compensation for his work which benefited the community, we need not consider Eva Mundell's contention that her husband had no right to divest her of her interest in their community property by making unauthorized gifts to his son. Idaho Code § 32–912, which discusses control of community property, states: "[e]ither the husband or the wife shall have the right to manage and control the community property, and either may bind the community property by contract," with the exception that both must consent to the sale, conveyance or encumbrance of real estate owned by the community. In this case, Orie Mundell bound the community to a contract for the payment of wages and bonuses to his son. Eva Mundell's consent to the terms of the contract was not legally

required; thus, her current challenge has no merit.

 The final issue in this case is whether the respondents are entitled to attorney fees on appeal. The respondents assert that the appeal was brought frivolously and without foundation. We agree. This appeal has presented no meaningful issue on a question of law. Eva Mundell has merely disputed the trial court's factual findings and asked us to re-weigh conflicting evidence. When a trial court's findings are supported by substantial evidence, the mere existence of other, conflicting evidence does not establish that the findings are clearly erroneous. *T–Craft Aero Club, Inc. v. Blough*, 102 Idaho 833, 837, 642 P.2d 70, 74 (Ct.App.1982). We are left with the abiding belief that this appeal was brought without foundation. Accordingly, we hold that the respondents are entitled to an award of a reasonable attorney fee on appeal, to be determined pursuant to I.A.R. 41.

The judgment of the district court is affirmed. Costs and attorney fees to respondents.

WALTERS, C.J., and SWANSTROM, J., concur.