34 

# CIRCUIT COURT OF FAIRFAX COUNTY

Susan Shupe Donovan

v.

Patrick D. Donovan

September 28, 1999

Case No. (Chancery) 159622

BY JUDGE JANE MARUM ROUSH

This matter came on for a hearing on July 28, 1999, on Susan Donovan's "Amended Motion to Overturn Validity of Pre-Nuptial Agreement." At the conclusion of the hearing, the Court took the motion under advisement. The Court has now had the opportunity to review the pleadings, the memoranda, the evidence adduced at trial, and the argument of counsel. For the following reasons, the Court finds that the pre-nuptial agreement is valid and enforceable.

*Facts*

The facts of the case will be briefly summarized.[1] Plaintiff Susan Donovan ("Susan") and defendant Patrick Donovan ("Patrick") met and began dating in 1986 when Susan was 22 years old and a college student. Patrick was about 33 years old and divorced. Early on in their relationship, Patrick made known to Susan that he considered himself to have been unfairly treated in his first divorce and that he would not marry again without a pre-nuptial agreement. After several years of dating, the couple became engaged in late 1992. They lived together beginning in March 1994. By that time, Susan had graduated from college in 1990 and was employed as a registered nurse at

---

[1] To the extent that the facts were disputed at trial, the following recitation constitutes the Court's findings of fact.

Georgetown University. She earned about $49,000.00 a year. Patrick was the sole proprietor of a gas station, a machine tool business, and a racing car business. In connection with those enterprises, he owned various items of personal property, including automobiles, trucks, and tools. In addition, he owned a residence in Great Falls, Virginia. Patrick had no set salary from his businesses. Because they were sole proprietorships, he simply took out of the businesses whatever funds he needed for his personal expenses. Susan was aware that "he wasn't hurting" for money. Prior to the marriage, Susan was fairly actively involved in Patrick's various businesses. She frequently assisted him with the books of the gas station and accompanied him to drag races in which his cars were entered. In addition, she was familiar with his personal property, including his machine tools and his various automobiles and trucks. She, of course, knew he owned his house in Great Falls; it was her residence for several months prior to the marriage.

When the couple began to discuss marriage, Patrick reiterated to Susan that he felt he had been poorly treated in his first divorce, in large part because he had been unable to prove what property was his and what property was his first wife's. He stressed to Susan that he wanted them to draw up lists of their separate property so that it would be clear what each had brought into the marriage. Susan agreed with this proposal in concept and thought it fair. Patrick urged Susan to get an attorney to prepare a premarital agreement. As the wedding approached and no premarital agreement was forthcoming from Susan, Patrick asked his attorney to prepare one.

The wedding date was set for October 15, 1994. A rehearsal dinner was scheduled for October 14, 1994. Prior to that time, the couple established their only joint account from which they paid wedding expenses. By the eve of the rehearsal dinner, Patrick and Susan had incurred about $10,000.00 in non-refundable expenses for their wedding. On the evening of October 13, 1994, after a dinner during which the couple shared a bottle of wine, Patrick presented Susan with the pre-nuptial agreement that his attorney had prepared. He told Susan to review the agreement and that he would not marry her unless she signed the agreement. Patrick and Susan spent thirty minutes discussing the agreement. She asked many questions about what the provisions of the agreement meant. Patrick assured her that the agreement meant that they would each keep their separate property in the event of a divorce. Susan was upset and tearful at being presented with the pre-nuptial agreement on the eve of the rehearsal dinner. Patrick signed the agreement that evening. Susan went to bed that night without signing the agreement. The next morning she awoke feeling "hung over" from the wine. She was preparing to leave for a full day of appointments in connection with wedding preparations and the rehearsal

dinner when Patrick reminded her that she needed to sign the agreement. Susan felt that she could not back out of the wedding because they had spent $10,000.00 on the wedding and out of town guests had already arrived. Susan sat down, scanned the agreement again, and signed it.

The pre-nuptial agreement that Susan and Patrick signed provided, among other things, that each party was entering into the agreement "freely, voluntarily, and with full knowledge" after a "full disclosure" of each other's means, resources, and assets. The agreement provided further that:

> [A]ll property now owned or hereafter acquired by Patrick or Susan in his or her separate name only shall remain his or her sole and separate property through the marriage, free and clear of any claim of the other, regardless of how said property was acquired and irrespective of the fact that said property may be converted to other property, provided it is not voluntarily commingled with property of the other or titled in the joint names of the parties. Neither party shall, by reason of the marital relationship or by reason of monetary contribution, claim or acquire any interest in any of the other's separately titled property, including appreciation of the value of such separately held property during the marriage, unless the parties specifically agree otherwise in writing ....
>
> If the parties acquire property jointly during the marriage, the property shall be held by them as provided in the instrument conveying or evidencing the title of the property. Property separately titled shall not be presumed to be joint because of joint contributions. However, all untitled property, such as furniture, furnishings, and appliances acquired during the marriage, shall be presumed to be jointly owned unless otherwise specified in writing.

Plaintiff's Ex. # 1. In the agreement, each party waived the right to receive lump sum spousal support but expressly did not waive the right to receive periodic payments of spousal support.

It is undisputed that Susan brought into the marriage personal property worth no more than $38,000.00 consisting of furniture, jewelry, and a Mercedes automobile. No evidence was adduced as to the value of Patrick's

assets, although they appear to be worth substantially more than Susan's assets.[2]

Patrick and Susan married as scheduled on October 15, 1994. After a marriage of four years and no children, they separated in 1998. Susan now seeks to void the pre-nuptial agreement because she did not sign it voluntarily and because it is unconscionable. She makes no claim that Patrick hid any assets from her. Instead, her principal complaint about the agreement is that she did not understand that she was waiving any right that she might have to claim that a portion of Patrick's separately titled property should be deemed marital because of her contributions to the property during the marriage. She claims further that she did not understand that Patrick was able to acquire additional property during the marriage with marital funds and have that property separately titled. Finally, she asserts that she did not understand the implications of waiving her right to a lump sum award of spousal support.

### Enforceability of Pre-Nuptial Agreement

Virginia has adopted the Uniform Premarital Agreement Act, Va. Code Ann. § 20-147, *et seq*. Code § 20-151 specifies when a premarital agreement is unenforceable. That section proves, in pertinent part:

> A. A premarital agreement is not enforceable if the person against whom enforcement is sought provides that:
> 1. That person did not execute the agreement voluntarily; or
> 2. The agreement was unconscionable when it was executed and, before execution of the agreement, that person (i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party; and (ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided.
> B. Any issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law. Recitations in the agreement shall create a prima facie presumption that they are factually correct.

Va. Code Ann. § 20-151.

---

[2] No evidence was introduced as to the dollar value of Patrick's estate either at the time the premarital agreement was signed or at the time of the hearing on Susan's motion to invalidate the agreement.

A. *Voluntariness*

A premarital agreement is not enforceable if it was not entered into voluntarily by the person against whom enforcement is sought. Va. Code Ann. § 20-151(A)(1). In this case, Susan acknowledged in the agreement that she was entering into the agreement "freely, voluntarily, and with full knowledge." Recitations in a premarital agreement create a prima facie presumption that they are factually correct. Va. Code Ann. § 20-151(B). The issue for the Court thus becomes whether Susan has rebutted the presumption that she entered into the agreement voluntarily.

In arguing that she did not enter into the agreement voluntarily, Susan emphasizes three factors: (i) her lack of an opportunity to consult with an attorney of her choosing; (ii) the proximity of the rehearsal dinner and the wedding to her being presented with the agreement; and (iii) Patrick's "threat" not to marry her unless she signed the agreement. The Court will address each of these contentions in order.

First, the Court agrees with Susan that she did not have a meaningful opportunity to consult with legal counsel between the time she was presented with the agreement and the wedding. This is a factor that the Court has considered. The commentary to Section 6 of the Uniform Premarital Agreement Act (Va. Code Ann. § 20-151) states that:

> Nothing in § 6 makes the absence of assistance of independent legal counsel a condition for the unenforceability of a premarital agreement. However, lack of that assistance may well be a factor in determining [voluntariness].

In this case, the Court does not find the absence of independent legal advice to Susan to be fatal to the voluntariness of the agreement. From the earliest days of her relationship with Patrick, Susan was very much aware of Patrick's strongly-held views that he would not marry again without a premarital agreement. She also knew of Patrick's desire that each keep as separate what each brought into the marriage. She had been urged by Patrick to get an attorney to prepare the agreement. Thus, both the concept of a premarital agreement and the basic parameters of the premarital agreement were well known to Susan long before she was presented with the agreement on the eve of the rehearsal dinner.

For the same reasons, the Court does not find that the presentation of the agreement to Susan a mere two days before the wedding renders involuntary Susan's execution of the agreement. Although the specific contractual

language had not been previously discussed with her, Susan knew for quite some time what Patrick wanted the agreement to say.

Finally, Patrick's "threat" not to marry Susan unless she signed the agreement does not render the agreement involuntary on Susan's part. When Susan signed the agreement, she was 29 years old and (unlike Patrick) was a college graduate. She was employed full-time in her chosen profession. She had been dating Patrick for eight years. She was under no compulsion to marry him. Patrick's aversion to marriage without a prenuptial agreement was well known to Susan, their families, and their friends. There is nothing offensive or sinister in Patrick's unwillingness to remarry without a premarital agreement. As one court aptly noted, "[i]nasmuch as an individual has a right not to get married, a refusal to proceed with the wedding unless the agreement was signed would not constitute duress." *Liebelt v. Liebelt*, 118 Idaho 845, 801 P.2d 52, 55 (1990). Simply put, one of the principal reasons to have a premarital agreement is to encourage divorced persons, in a "triumph of hope over experience," to remarry. His "threat" not to marry her without a premarital agreement did not vitiate the voluntariness of her signing the agreement.

For the foregoing reasons, the Court finds that Susan has not rebutted the presumption that she signed the agreement voluntarily.

### B. *Unconscionability*

For Patrick and Susan's premarital agreement to be unconscionable, the Court must conclude the following:

1. The agreement was unconscionable when signed; and

2. Before she signed it, Susan as not given a fair and reasonable disclosure of Patrick's assets and financial obligations; and

3. Susan did not waive in writing her right to disclosure of Patrick's assets and liabilities beyond what had been given.

Va. Code Ann. § 20-151(A)(2). Applying this statute, the Court does not find that Patrick and Susan's premarital agreement is unconscionable.

First, there was nothing unconscionable about Patrick and Susan's agreement when it was signed.

It is a common provision of premarital agreements — indeed it is the principal purpose of most premarital agreements — that each spouse will maintain as separate his or her separate property brought into the marriage. Susan testified that she agreed with and thought fair Patrick's desire that each spouse would maintain his or her separate property. She contends that she did not understand that she was giving up her right to argue "tracing" of her

marital contributions to Patrick's separate property at equitable distribution. Susan's agreement with Patrick, however, is quite clear that Patrick's separate businesses would remain his separate property. The agreement provides:

> Both parties expressly agree that these three (3) businesses shall remain Patrick's sole and separate property throughout the marriage and that Susan will acquire no interest, right, or claim to these businesses or their assets.

Plaintiff's Ex. # 1, Section V.

Although the evidence of the nature and extent of Susan's contributions to Patrick's separate property was not fully developed at trial, the Court notes Susan's claimed contributions (for example, by acting as a crew member for his race car) do not appear to be the type of "significant" personal efforts that contributed to a "substantial" increase in the value of Patrick's separate property such that Susan would succeed in a "retracing" argument at equitable distribution. Va. Code Ann. § 20-107.3(A)(3); *Martin v. Martin*, 27 Va. App. 745 (1998).

Susan likewise contends that it is unconscionable that during the marriage Patrick could continue to acquire property in his separate name. Code § 20-150 provides that the acquisition and disposition of property by the spouses is a permissible subject matter for a premarital agreement. Va. Code Ann. §§ 20-150(1), (2), and (3). This is a common provision in premarital agreements, and the Court does not find it to be unconscionable.

Nor is it unconscionable to provide that each spouse waives his or her right to seek lump sum spousal support. Code § 20-150(4) provides that spousal support is a permissible subject matter for the parties to address in a premarital agreement. Furthermore, neither Patrick nor Susan waived his or her right to seek periodic spousal support. The Court notes that lump sum spousal support is a limited benefit in Virginia, to be awarded only in cases involving "compelling reasons" or "special circumstances." *Blank v. Blank*, 10 Va. App. 1 (1990); *Mosley v. Mosley*, 19 Va. App. 192 (1994). The Court concludes that it is not unconscionable for a premarital agreement to provide that both parties waive their rights to seek lump sum spousal support.

Fatal to Susan's claim of unconscionability is that Susan did receive a fair disclosure of Patrick's assets and liabilities. The agreement itself identifies each of Patrick's businesses and assets, although it does not attempt to place a monetary value on any asset. Susan was intimately involved in Patrick's various businesses, to the extent that she frequently helped him with maintaining their books and records. She knew the nature and extent of his

assets. Furthermore, in the agreement, Susan acknowledged that she had received "full disclosure" of Patrick's "means, resources, and assets." In fact, Susan does not contend that Patrick misled her in any way about the nature or extent of his assets.

For the foregoing reasons, the Court does not find Patrick and Susan's premarital agreement to be unconscionable.

## Conclusion

The Court concludes that the premarital agreement between Patrick and Susan was entered into voluntarily by Susan. The Court further concludes that the agreement is not unconscionable. Therefore, the agreement is enforceable. Susan's "Amended Motion to Overturn Validity of Pre-Nuptial Agreement" will be denied.